# Illinois Official Reports

## Appellate Court

*People v. Guillen*, 2014 IL App (2d) 131216

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. LUIS GUILLEN, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-13-1216 |
| Filed | November 25, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution where the trial court and the State understood at defendant's initial hearing on his plea to a misdemeanor charge of driving under the influence that the charge should have been a felony based on a prior felony DUI conviction that involved great bodily harm and a three-year sentence, the trial court erred in allowing the dismissal of the felony charges the State filed after being allowed to nol-pros the misdemeanor charges based on defendant's motion claiming that the felony charges violated the prohibition against double jeopardy when the record showed that the trial judge had already placed defendant in jeopardy by accepting defendant's guilty plea to the misdemeanor charge, since the State's motion to nol-pros the misdemeanor DUI charge was not brought for an improper purpose and the trial court could properly terminate the plea hearing, vacate the plea, and grant the State's motion without violating the policies underlying the protection of the double jeopardy prohibition. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 13-CF-1421; the Hon. Daniel P. Guerin, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman and Edward R. Psenicka, Assistant State's Attorneys, of counsel), for the People.

No brief filed for appellee.

Panel

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justice Zenoff specially concurred, with opinion.
Justice Hudson dissented, with opinion.

**OPINION**

¶ 1    The State appeals the order of the circuit court of Du Page County dismissing charges of aggravated driving under the influence (DUI) (625 ILCS 5/11-501(d)(1)(D) (West 2012)) on the basis that the charges placed the defendant, Luis Guillen, in double jeopardy. For the following reasons, we reverse and remand.

¶ 2                        I. BACKGROUND

¶ 3    On April 11, 2013, the defendant was arrested and charged by complaint with misdemeanor DUI pursuant to section 11-501(a)(5) of the Illinois Vehicle Code (Code) (625 ILCS 5/11-501(a)(5) (West 2012)) (count I) and disobeying a traffic control device (625 ILCS 5/11-305 (West 2012)) (count II). The case was docketed as No. 13-DT-1311.

¶ 4    On June 27, 2013, the parties appeared before the trial court (Judge Richard Russo, presiding). Defense counsel explained that the case was up on his motion to quash a warrant for failure to appear, and he "would also look to resolve the case." The prosecutor said that the State would proceed on count I and would enter a *nolle prosequi* on count II.

¶ 5    The trial court began taking the defendant's plea, stating, "Sir, I am told you wish to plead guilty to County [*sic*] 1, driving under the influence of alcohol, a class A misdemeanor, punishable by a minimum of court supervision, a maximum of 364 days in the county jail, a $2,500 fine, plus statutory costs and assessments." The trial court then corrected itself, noting that the defendant was not eligible for court supervision, because he had a prior DUI from 2004. Accordingly, the minimum would be conditional discharge. The parties agreed. The trial court "amended" the admonishments to reflect that the minimum sentence was conditional discharge, and the defendant told the court that he still wished to plead guilty. The trial court then stated, "there will be an order recalling and quashing the warrant."

¶ 6    At that point, the State interjected, apologizing and stating that the defendant's blood test showed a blood alcohol concentration (BAC) of 0.208. As a result, the minimum sentence would be 2 days in jail; also, because he was a second-time offender, a minimum sentence of 5 days in jail or 240 hours of community service would apply. Defense counsel objected, saying that the factual basis for the plea did not include the blood test result. The trial court ascertained that the parties did not agree as to the minimum sentence faced by the defendant. The State added that it was asking for a sentence above the minimum anyway, and so they would leave it

- 2 -

to the trial court's discretion. The trial court then asked whether, "if we don't agree on anything else, we agree the minimum is conditional discharge, and the maximum is 364 days." The parties agreed with this statement, and the trial court stated that the previous admonishments would stand.

¶ 7        The trial court then asked the State what sentence it was recommending. The State responded as follows:

> "Your Honor, this was [a] case where the Defendant missed an intersection. Intersection lights were out. He trailed into the intersection before stopping his car, alerting police to his vehicle.
>
> When his vehicle was curbed, he admitted to taking 30 antidepressant pills.
>
> He was taken to the hospital, where blood was drawn, where the police officer was told the blood result was .208.
>
> He does have a 2004 DUI conviction, a felony, great bodily harm case."

Although the defendant had said earlier that the factual basis for his plea did not include the result of the blood test, the record does not contain any indication that the defendant disputed that his prior DUI had caused great bodily harm.

¶ 8        The State then requested a particular sentence. Defense counsel responded at length, arguing for leniency and no jail time so that the defendant could obtain substance abuse treatment. The trial court stated that it would pass the case so that it could review the defendant's evaluation and asked whether either side wanted to add anything further at this point. The parties said no.

¶ 9        When the case was called again, the trial court advised the defendant that he had a right to make any statements he would like the court to consider before it imposed sentence. The defendant stated that he took full responsibility for what he did and that he preferred rehabilitation to jail time. The trial court questioned the defendant to confirm that he was currently involved in psychiatric treatment, was being seen by a doctor and prescribed medications, and was "generally in good health." The court again asked whether either side wanted to add anything further, and the parties said no.

¶ 10        The court then asked the parties whether the defendant had caused any personal injury or accident in this case, and the parties agreed that he had not. The State confirmed this point and repeated its earlier description of the incident, saying, "In this case, there was an intersection where the stop light was out. There was [*sic*] stop signs placed in the intersection, and the Defendant did not see[–]well, allegedly, did not see the stop signs, stopped in [the] middle of the intersection, which alerted the officer's attention."

¶ 11        The trial court then asked whether, on the 2004 conviction, the defendant had been placed on felony probation. The State did not know, but defense counsel stated that the defendant had been incarcerated for three years. The trial court then began asking the defendant questions such as what he had learned as a result of that sentence, whether he had enjoyed his incarceration, and whether he thought that more incarceration would help him get control of his problem. In response to further questioning by the court, the defendant promised that if he received probation he would follow all court-imposed requirements, would comply with "zero tolerance" on taking alcohol and nonprescription drugs, and would not drive at all.

¶ 12        The following exchange then occurred:

"THE COURT: Listen to me very carefully because I am going to give you an opportunity to prove to me that you have learned your lesson and that you are willing to comply with zero tolerance.

THE DEFENDANT: Okay.

THE COURT: If you fail, you'll leave me no choice but to go along with the recommendation of the prosecution and incarcerate you. That's not what I want to do.

I've taken to heart the comments of your attorney, which would lead me to believe that maybe you are in a better place right now. However, it's not going to be an easy sentence.

MR. WHARRIE [State's Attorney]: Your Honor, at this time, before sentence is handed down, the State is asking to withdraw its recommendation and nolle pros [*sic*] this case at this time before sentence is rendered.

THE COURT: Why?

MR. WHARRIE: Your Honor, reviewing the aggravating factors of the DUI, I see that with a prior DUI of death or great bodily harm, that is an aggravating factor [that the] State was unaware [*sic*] as an element to enhance.

We would–we were not under the impression this was an enhanceable offense.

So, based on that–

THE COURT: So, it is enhanceable now?

MR. WHARRIE: We believe based on my reading of the statute.

At this time, we would ask to dismiss the charges, on a later date to refile."

The trial court then offered the prosecutor the opportunity to consult with a supervisor about his request, saying that if "the facts of this case justify that [felony charges], that's fine," but the court did not want to have the State nol-pros the current charges, leaving the defendant without any requirement that he obtain counseling, and then refile misdemeanor charges. The prosecutor indicated that he understood and did wish to speak with his supervisor, and the case was again passed.

¶ 13    When the prosecutor returned, he stated that, after speaking with the supervisor, he was moving to nol-pros all counts "for felony enhancement." Defense counsel objected, arguing that both parties had been asked if they had anything left to present and had said no, and that "prejudice [*sic*] should attach." Noting that it had not pronounced sentence or entered judgment, the trial court stated that it would "allow the defendant to withdraw his plea of guilty" and grant the State's motion to nol-pros all counts. The trial court also stated that it would remove all of the notes it had made on the file.

¶ 14    On July 11, 2013, in case No. 13-CF-1421, the defendant was charged by indictment with two counts of aggravated DUI, a felony, pursuant to section 11-501(d)(1)(D) of the Code (625 ILCS 5/11-501(d)(1)(D) (West 2012)). The indictment alleged that the defendant had previously been convicted of DUI that resulted in great bodily harm to another and that, on April 11, 2013, the defendant had driven while under the influence of alcohol (count I) and while having a blood alcohol concentration of 0.08 or greater (count II).

¶ 15    On July 17, 2013, in the misdemeanor case (No. 13-DT-1311), the defendant filed a motion to reconsider. The defendant argued that the trial court had already accepted his guilty plea and had begun to pronounce a lenient sentence (probation) when the State moved to nol-pros the

- 4 -

charges, and the State's motion was an improper attempt to obtain a second opportunity to prosecute him and obtain a harsher sentence. On August 6, 2013, Judge Russo heard argument on the motion and denied it. Judge Russo rejected the defendant's argument that the State sought to nol-pros the charges for improper reasons (such as to forum shop), saying that he recalled the case, and it had appeared to him that the State was reviewing its file as the plea hearing progressed and realized belatedly that the offense should have been charged as a felony:

> "[T]he way this thing transpired, the State was in the middle of reviewing their file and [it] had nothing to do with whatever the Court has [*sic*] done. And I have to say and I think you would agree from the time you've been in here, the State in my view has never appeared to form [*sic*] shop. They're not always pleased with my sentences, but they take it as it comes, the good, the bad, whatever."

Judge Russo noted that he had not yet pronounced sentence when the State moved to nol-pros the charges, and he believed that, until judgment was entered, he had discretion to accept or vacate the guilty plea. He had vacated the plea to the misdemeanor charges in the interests of justice, given the State's indication that the offense was in fact a felony.

¶ 16 On August 28, 2013, the defendant moved to dismiss the felony DUI case on the basis of double jeopardy. The defendant argued that Judge Russo had implicitly accepted his guilty plea by beginning to address sentencing considerations, and jeopardy attached when the plea was accepted. Thus, he argued, the felony DUI charges were an unconstitutional attempt to prosecute him twice for the same offense. The State responded that Judge Russo had the authority to vacate the plea and that once he did so no jeopardy remained and the defendant could be recharged.

¶ 17 The trial court (Judge Daniel Guerin, presiding) granted the defendant's motion to dismiss. Although Judge Guerin agreed that the record did not show any improper conduct by the State in moving to nol-pros the charges, he ruled that jeopardy had already attached by the time of the State's motion and that the State had not established that jeopardy was properly terminated in a manner that would allow the charges to be refiled after the guilty plea was vacated by Judge Russo. Judge Guerin subsequently denied the State's motion to reconsider, and the State filed a timely notice of appeal pursuant to Illinois Supreme Court Rule 604(a)(1) (eff. Feb. 6, 2013).

¶ 18                                                II. ANALYSIS

¶ 19 On appeal, the State argues that the trial court erred in finding that Judge Russo accepted the defendant's guilty plea to the misdemeanor charge. It also argues that, even if Judge Russo initially accepted the plea, a trial court may withdraw its acceptance of a guilty plea in the interests of justice at any time before final judgment, and double jeopardy does not bar the later prosecution arising out of the same incident.

¶ 20 We note as a preliminary matter that the defendant filed no brief in this court responding to these arguments. Under *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976), we may consider the merits of an appeal despite the absence of an appellee's brief if "the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief." Here, the focus is on the trial court's words and actions during the plea hearing. There are no disputed issues of fact. Thus, the record is

indeed simple. Further, the sole issue on appeal is the legal effect of those words and actions. Although this is a matter on which principled persons may differ (as demonstrated by Justice Hudson's dissent, *infra*), I believe that it is not so complex a legal issue that we cannot proceed without the aid of an appellee's brief. See *People v. Marcella*, 2013 IL App (2d) 120585, ¶¶ 23, 36 (decided under *Talandis*; weighing whether undisputed facts established probable cause to detain the defendant). Further, although we address herein an issue of first impression, there is ample authority supporting the application of *Talandis*'s "easily decided" prong to such issues. See, *e.g.*, *Brzowski v. Brzowski*, 2014 IL App (3d) 130404, ¶¶ 15-16 (deciding issue of first impression on the merits despite the lack of an appellee's brief); *In re Petition of Sanjuan-Moeller*, 343 Ill. App. 3d 202, 205-06 (2003) (same); *Department of Public Aid ex rel. Pinkston v. Pinkston*, 325 Ill. App. 3d 212, 214-16 (2001) (same). In her special concurrence, Justice Zenoff states that she would prefer to proceed under a different prong of *Talandis* and find (without reaching the merits of the appeal) that the State's argument *prima facie* "demonstrate[d] that the trial court reversibly erred in dismissing the indictment." *Infra* ¶ 66. Among other things, Justice Zenoff is concerned by the consideration of case law not cited in the State's brief (including foreign case law), but such independent research is a normal practice in this court's resolution of appeals, regardless of whether we have received one brief or two; indeed, we would be remiss in our duty to do justice and reach a correct result if we never considered case law beyond that cited by the parties. See *People v. Benton*, 322 Ill. App. 3d 958, 959 (2001) (a *Talandis* case considering on the merits an issue of first impression "on the State's brief and our independent research"). Because I depart from Justice Zenoff regarding the proper application of *Talandis* (although we agree that reversal of the judgment is the correct outcome), the following analysis, which is mine alone, addresses the merits of the issue. *Talandis*, 63 Ill. 2d at 133. As the sole issues are legal, the State's arguments are reviewed *de novo*. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006).

¶ 21                                    A. Applicable Legal Principles

¶ 22         "The double jeopardy clause of the fifth amendment to the United States Constitution, made applicable to the states through the fourteenth amendment, provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.' " *People v. Bellmyer*, 199 Ill. 2d 529, 536-37 (2002) (quoting U.S. Const., amend. V). That same right is protected by the Illinois Constitution and Illinois statute. *Id.* (citing Ill. Const. 1970, art. I, § 10, and 720 ILCS 5/3-4(a) (West 1998)). The double jeopardy clause protects against multiple prosecutions and multiple punishments for the same offense by forbidding three things: a second prosecution for the same offense after an acquittal, a second prosecution for the same offense after a conviction, and multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). As the United States Supreme Court has explained:

> "When a defendant has been once convicted and punished for a particular crime, principles of fairness and finality require that he not be subjected to the possibility of further punishment by being again tried or sentenced for the same offense. [Citations.] When a defendant has been acquitted of an offense, the Clause guarantees that the State shall not be permitted to make repeated attempts to convict him, 'thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though

- 6 -

innocent he may be found guilty.' " *United States v. Wilson*, 420 U.S. 332, 343 (1975) (quoting *Green v. United States*, 355 U.S. 184, 187-88 (1957)).

In this case, the defendant argued in the trial court that the State's prosecution of him on felony DUI charges was in essence a second attempt to convict him of the same offense. (For the purposes of this appeal, we treat the charges of misdemeanor DUI in No. 13-DT-1311 and felony DUI in No. 13-CF-1421 as being based upon the same offense. See *People v. Quigley*, 183 Ill. 2d 1, 10-11 (1998).)

¶ 23 Determining whether the double jeopardy clause is violated by a second proceeding against a defendant involves two steps. The first inquiry is "whether the defendant was placed in jeopardy during the first proceeding." *Bellmyer*, 199 Ill. 2d at 537. If so, the next question is whether the second proceeding is nevertheless permitted. *Id.*; *cf.* 720 ILCS 5/3-4(a)(3), (d)(2) (West 2012) (second prosecution permitted where the first prosecution was not "terminated improperly," or where the conviction resulting from the first prosecution was later invalidated, set aside, reversed, or vacated, so long as the defendant was not thereby found not guilty).

¶ 24 When the State has nol-prossed criminal charges, a second prosecution on the same charges is permitted if the *nolle prosequi* occurred before jeopardy attached. *People v. Van Schoyck*, 232 Ill. 2d 330, 340 (2009). However, if the motion to nol-pros was granted after jeopardy had attached, the *nolle prosequi* generally operates as an acquittal that bars further prosecution of those charges. *People v. Cabrera*, 402 Ill. App. 3d 440, 447 (2010) (citing *People v. Daniels*, 187 Ill. 2d 301, 312 (1999)). But see *People v. Milka*, 211 Ill. 2d 150, 174-77 (2004) (where State entered a *nolle prosequi* on a lesser offense after the start of a jury trial on several charges, the *nolle prosequi* did not operate as an acquittal and double jeopardy did not bar the jury's conviction of the defendant for the greater offense).

¶ 25                               B. Did Jeopardy Attach?

¶ 26 "The starting point in any double jeopardy analysis *** is determining whether or not jeopardy had attached" in the first proceeding. *People ex rel. Mosley v. Carey*, 74 Ill. 2d 527, 534 (1979). The United States Supreme Court has set bright-line rules about the point at which jeopardy attaches in a trial before a jury or a judge. In a jury trial, " 'jeopardy attaches when the jury is empaneled and sworn.' " *Martinez v. Illinois*, 572 U.S. ___, ___, 134 S. Ct. 2070, 2074 (2014) (*per curiam*) (quoting *Crist v. Bretz*, 437 U.S. 28, 35 (1978)). In a bench trial, "jeopardy attaches when the court begins to hear evidence." *Serfass v. United States*, 420 U.S. 377, 388 (1975). Illinois law applies these same tests in the context of jury and bench trials. *Cabrera*, 402 Ill. App. 3d at 447.

¶ 27 In the context of a guilty plea proceeding, however, "[t]he United States Supreme Court has yet to decide when jeopardy attaches ***, although it has assumed that jeopardy attaches at least by the time of *sentencing* on the plea." (Emphasis in original.) *State v. Thomas*, 995 A.2d 65, 72 (Conn. 2010) (citing *Ricketts v. Adamson*, 483 U.S. 1, 8 (1987)); *cf. Ohio v. Johnson*, 467 U.S. 493 (1984); *Brown v. Ohio*, 432 U.S. 161 (1977) (in both of these Supreme Court cases involving guilty pleas and double jeopardy, it was undisputed that the trial courts had already sentenced the defendants for the convictions on the charges to which they pled guilty). The Illinois Supreme Court has held that, in the context of a guilty plea, jeopardy attaches "when the guilty plea is accepted by the trial court." *Bellmyer*, 199 Ill. 2d at 538 (citing *People v. McCutcheon*, 68 Ill. 2d 101, 106 (1977)). However, Illinois law has not defined the point at which a trial court is deemed to have "accepted" a guilty plea.

¶ 28    As far as can be determined, *McCutcheon* was the first Illinois Supreme Court case to consider when jeopardy attaches where the conviction is based upon a guilty plea rather than a trial. In that case, the defendant had been charged with a felony (indecent liberties with a child) and a misdemeanor (contributing to the sexual delinquency of a child). *McCutcheon*, 68 Ill. 2d at 104. Both charges were based upon a single act of sexual intercourse with a 15-year-old girl. As part of a plea agreement, the defendant pled guilty to the misdemeanor, the State nol-prossed the felony count, and the defendant was sentenced to 364 days in prison. *Id*. The defendant then successfully appealed his conviction (arguing noncompliance with Illinois Supreme Court Rule 402 (eff. Sept. 17, 1970)), his guilty plea was vacated, and the case was remanded to allow him to plead anew. *McCutcheon*, 68 Ill. 2d at 104. On remand, both charges against him were reinstated, and a jury convicted the defendant of both charges. The defendant again appealed and the appellate court held that double jeopardy barred the State from reinstating the felony charge. *Id*. The State then appealed to the supreme court.[1]

¶ 29    The supreme court began by noting that "the 'double jeopardy implications reverberating from a guilty plea and a jury verdict are not identical' even though a 'guilty plea is as final as a jury verdict.' " *Id*. at 105-06 (quoting *Ward v. Page*, 424 F.2d 491, 493 (10th Cir. 1970)). Although a *jury's* conviction of a defendant on a lesser included offense is equivalent to an acquittal on the greater charge (because the jury had the opportunity to convict the defendant of the greater charge but chose not to), a *guilty plea* to a lesser included offense does not have the same effect. "Where the defendant pleads guilty to a lesser offense, *** there is no finding or verdict–of conviction or acquittal–on the greater offense." *Id*. at 106.

¶ 30    The supreme court then noted that "[o]ne of the purposes of the protection against double jeopardy is to protect an 'accused from the unfair harassment of successive trials.' " *Id*. (quoting *United States v. Goldman*, 352 F.2d 263, 266 (3d Cir. 1965)). However, unfair harassment would occur only if jeopardy had already attached on the charged offense, and that had not occurred in that case, because the defendant had never pled guilty to or been subjected to trial on the felony charge. The supreme court then stated that "[j]eopardy attached only at the time the guilty plea was accepted by the court [citation] and logic dictates that jeopardy would attach only to the crime pleaded to since there has been no other finding of any sort." *Id*. Accordingly, once the defendant's plea of guilty to the misdemeanor charge was vacated on appeal, the State was free to reinstate the felony charge as well. *Id*. The sole support cited for the supreme court's statement that jeopardy "attached only at the time the guilty plea was accepted by the court" was an annotation in the American Law Reports. See *id*. (citing F.M. English, Annotation, *Plea of Guilty as Basis of Claim of Double Jeopardy in Attempted Subsequent Prosecution for Same Offense*, 75 A.L.R.2d 683 (1961 & Supp. 1968)). The supreme court did not go into the specific act by a trial court that would constitute "accepting" a guilty plea, as that issue was not before the court.

¶ 31    In *People v. Jackson*, 118 Ill. 2d 179 (1987), *overruled on other grounds by People v. Stefan*, 146 Ill. 2d 324 (1992), the supreme court shed some additional light on the subject. There, following an accident in which he collided with a tree and his passenger was killed, the defendant was charged by uniform traffic citations with DUI and illegal transportation of alcohol. At his arraignment, he pled guilty to the charges. The trial court admonished him and

---

[1]Both parties agreed that, regardless of whether his felony conviction was upheld, the defendant could not receive a more severe sentence than that already imposed. *Id*.

accepted his guilty plea, and it set a sentencing date approximately six weeks later. *Id*. at 183. Prior to sentencing, however, the State, without notice to the defendant, appeared in court and nol-prossed both charges. The defendant was then indicted on two counts of reckless homicide. *Id*. The defendant moved to dismiss portions of the indictment on the basis of double jeopardy. The trial court granted the motion, dismissing count II (which was premised on DUI) and ruling that evidence that the defendant was intoxicated and was illegally transporting alcohol (facts that formed the bases of the offenses he had pled guilty to) could not be used in the prosecution of count I. The State appealed.

¶ 32    The decision in *Jackson* focused almost entirely on the extent to which the charges in the indictment were the "same offense" as those to which the defendant had pled guilty. However, the supreme court also addressed the State's argument that, because it had nol-prossed the initial charges before the defendant was sentenced, the defendant had never been placed in jeopardy on those charges. (A criminal conviction is not a final judgment until the defendant is sentenced. *People v. Baldwin*, 199 Ill. 2d 1, 5 (2002).) The supreme court rejected this argument, noting that, in a jury or bench trial, jeopardy attaches before the final judgment of conviction is entered: in a jury trial it attaches when the jury is empaneled and sworn, and in a bench trial it attaches when the court begins to hear evidence. *Jackson*, 118 Ill. 2d at 188. The supreme court then reiterated its holding in *McCutcheon* that, although the effects of a guilty plea are not necessarily the same as those of a finding of guilty by a court or jury (at least with reference to charges other than those to which the plea is entered), "jeopardy attaches at the time the guilty plea is accepted by the court." *Id*. at 188-89. The court went on to hold that, because the trial court had admonished the defendant about the effects of his guilty plea, the defendant had persisted in his plea, and the plea was "accepted" by the court, jeopardy had attached to the original charges. *Id*. at 189.

¶ 33    However, in *Jackson*, the plea proceeding had been completed and several weeks had elapsed before the State moved to nol-pros the charges. Thus, *Jackson* does not tell us whether the trial court's "acceptance" of the plea occurred at the end of the plea proceeding or at some point before that.

¶ 34    In *Bellmyer*, 199 Ill. 2d at 538, a more recent case, the supreme court again cited *McCutcheon* for the proposition that jeopardy attaches when the trial court accepts the guilty plea, but the court did not elaborate on that statement. Further, *Bellmyer* involved a partial stipulation at a bench trial rather than a guilty plea, and in determining whether jeopardy had attached the supreme court held that the proceeding was not appropriately compared to the entry of a guilty plea. *Id*. at 540. Thus, although *Bellmyer* is the most recent citation for the rule that jeopardy attaches "when the trial court accepts the guilty plea," it offers little guidance on the meaning of that phrase.

¶ 35    The Illinois Supreme Court thus has not decided whether, when a trial court begins to accept a guilty plea but then vacates that plea during the same hearing, it has "accepted" the plea so as to cause jeopardy to attach. Accordingly, the court must turn to authority from other jurisdictions in order to determine whether jeopardy attaches in a guilty plea proceeding under the circumstances present here. Substantial authority suggests that jeopardy did not attach here.

¶ 36    The majority of other courts have adopted the position that jeopardy attaches when a trial court unconditionally accepts the plea, regardless of whether that final acceptance occurs during the initial plea proceeding or thereafter. See, *e.g.*, *United States v. McIntosh*, 580 F.3d

1222, 1227 (11th Cir. 2009); *United States v. Sanchez*, 609 F.2d 761, 763 (5th Cir. 1980); *Thomas*, 995 A.2d at 74; *Waters v. Farr*, 291 S.W.3d 873, 892 (Tenn. 2009); *Peiffer v. State*, 88 S.W.3d 439, 444 (Mo. 2002); *State v. Duval*, 589 A.2d 321, 324 (Vt. 1991). Thus, a trial court may vacate a guilty plea if it becomes aware of facts counseling against acceptance of the plea so long as it does so before the plea is accepted in a final and unconditional manner. These courts emphasize the discretion of the trial court in deciding whether to accept the plea. See *Santobello v. New York*, 404 U.S. 257, 262 (1971) ("[t]here is, of course, no absolute right to have a guilty plea accepted" and such acceptance is within the sound discretion of the trial court); *People v. Henderson*, 211 Ill. 2d 90, 103 (2004) (same); see also *United States v. Gomez-Gomez*, 822 F.2d 1008, 1011 (11th Cir. 1987) ("[p]roper operation of these safeguards [imposed by the federal rule governing the acceptance of guilty pleas] demands that the judge retain broad discretion to set a guilty plea aside, at least until he has fully discharged his *** responsibilities" under that rule).

¶ 37 In line with this principle, several courts have found that no jeopardy attaches where a trial court begins to accept a guilty plea but then vacates that plea when additional facts come to light. For instance, in *United States v. Santiago Soto*, 825 F.2d 616 (1st Cir. 1987), a federal court of appeals held that jeopardy did not attach when the district court initially accepted the guilty plea but then later rejected the plea during the same hearing, after the defendant stated that he had not committed the offense charged. *Id*. at 620. As the defendant "was not placed in jeopardy in any meaningful sense" during the initial plea proceeding, double jeopardy did not bar the later prosecution of the defendant on more serious charges arising out of the same facts. *Id*.

¶ 38 Some courts have gone further, holding that, even where the trial court's rejection of the plea occurs after the initial plea hearing has ended, there was no true, unconditional "acceptance" of the plea. For instance, in *Thomas*, 995 A.2d 65, the trial court initially accepted a plea agreement under which the defendant pled guilty to one count of sexual assault in the second degree and one count of risk of injury to a child, and the state agreed to nol-pros the remaining six felony charges at the time of sentencing. The trial court suggested that it would impose a suspended sentence of five years, of which the defendant would serve one year. However, the trial court indicated that the sentence would depend on input from the victim. The trial court ordered a presentence investigation and continued the case for sentencing. *Id*. at 68.

¶ 39 The presentence investigation disclosed several new facts that were not available to the trial court at the time it accepted the defendant's guilty plea. On the basis of the newly revealed facts, the prosecution asked that the plea be vacated. *Id*. at 69. The trial court deferred ruling on the prosecution's motion until it could conduct a hearing at which the victim could be heard. After that hearing, the trial court declined to impose the sentence it had previously suggested, vacated the guilty plea, and returned the case to the trial call. *Id*. The defendant moved to dismiss the charges, arguing that he had been placed in jeopardy when his plea was accepted and that he should not have to face the same charges again. *Id*. at 70.

¶ 40 The Supreme Court of Connecticut engaged in a lengthy review of the case law regarding the issue of when jeopardy should be regarded as having attached in a guilty plea proceeding. The court noted that some courts chose to adopt a bright-line test related to specific points in the plea proceeding (*e.g.*, the trial court's rhetorical statement that it was accepting the guilty plea, or the imposition of a sentence), while others applied a case-by-case approach focused on

- 10 -

whether the circumstances surrounding the trial court's acceptance of the plea implicated the policy concerns underlying the double jeopardy protection. *Id*. at 73. Of these competing approaches, it found the latter approach "far more persuasive," as "the acceptance of a guilty plea is legally different from a conviction based on a jury's verdict, and, therefore, *** jeopardy does not necessarily attach automatically upon the acceptance of a guilty plea as it does to an actual judgment of conviction." *Id*. at 76.

¶ 41 Instead, the Connecticut Supreme Court held that the attachment of jeopardy should be analyzed "in light of the twin aims of the double jeopardy clause–protecting a defendant's interest in finality and preventing prosecutorial overreaching." *Id*. (citing *United States v. Patterson*, 406 F.3d 1095, 1097 (9th Cir. 2004) (Kozinski, J., dissenting from denial of petition for rehearing *en banc*)); see also *Johnson*, 467 U.S. at 501 (looking to "the principles of finality and prevention of prosecutorial overreaching" in analyzing whether double jeopardy barred a prosecution). As to the first factor, the defendant could have had little interest in the finality of his guilty plea in light of the trial court's caution that sentencing would depend on a factor to be provided later–the victim's input. In addition, the defendant had pled to only two of the charges, and the agreement did not require the prosecution to dismiss the remaining charges until sentencing and final judgment. Finally, under Connecticut state law, sentencing and final judgment could not occur until after a presentence investigation had been conducted and the victim's statement had been received, and so any acceptance of the guilty plea was implicitly conditional. *Thomas*, 995 A.2d at 77-78. As to the second factor, there was no evidence of prosecutorial overreaching: the prosecution had not reneged on a plea agreement or attempted to re-prosecute the defendant after a previous opportunity to test out evidence or theories. *Id*. at 78. As a sister state's supreme court had commented in a similar case, the issue was not one of governmental overreaching, but rather " 'a much narrower and simpler one–whether the court ought to be able to correct a mistake.' " *Id*. at 78-79 (quoting *Duval*, 589 A.2d at 325). Accordingly, the court concluded that jeopardy had not attached at the trial court's initial acceptance of the defendant's guilty plea. *Id*. at 79.

¶ 42 At the far end of the spectrum are cases holding that a guilty plea is not truly "accepted," such that jeopardy attaches, until final judgment and sentencing. The New Mexico Supreme Court's decision in *State v. Angel*, 2002-NMSC-025, 132 N.M. 501, 51 P.3d 1155, which involved facts similar to the case before us, exemplifies this position. In that case, the defendant was initially charged by complaint with misdemeanor DUI and various other traffic offenses. *Id*. ¶ 2. He appeared in magistrate court (no prosecutor was present) and pleaded no contest to all of the charges, and the trial court accepted the plea. Two months later, the prosecutor's office received notice that the defendant would be sentenced. The prosecutor appeared at the sentencing and asked to dismiss the criminal complaint in order to pursue a felony DUI charge. The trial court dismissed the complaint without prejudice. Four months later, the defendant was indicted on the same charges to which he had pled guilty in magistrate court, except that the DUI was charged as a felony. The defendant moved to dismiss the indictment on the grounds of double jeopardy.

¶ 43 The New Mexico Supreme Court held that double jeopardy was not implicated, because jeopardy had not attached to the defendant's initial plea. The court noted that several federal cases including *Santiago Soto*, *United States v. Combs*, 634 F.2d 1295 (10th Cir. 1980), and the Supreme Court's decision in *Brown* supported the conclusion that, under the United States Constitution, jeopardy does not attach to a guilty plea until a defendant has been sentenced.

*Angel*, 2002-NMSC-025, ¶ 13, 132 N.M. 501, 51 P.3d 1155. The court adopted this position, stating that the defendant's subsequent prosecution "violate[d] none of the interests protected by double jeopardy," as his initial plea did not carry the same expectation of finality as a jury verdict or the entry of judgment and sentence; he did not experience the "expense, strain, or embarrassment of a trial" on the initial charges; and the prosecution had no "opportunity to rehearse its presentation of proof" and was not engaging in a second attempt to get a conviction. *Id.* ¶ 15. To the contrary, "to end prosecution now would deny the State its right to one full and fair opportunity to convict those who have violated its laws." *Id.*[2]

¶ 44     Applying these principles to the case at bar, it is clear that jeopardy had not attached at the point when the State nol-prossed the misdemeanor charges. Although the defendant had indicated that he wished to plead guilty, Judge Russo admonished him regarding some of the consequences of his plea, and Judge Russo had turned his attention to the question of the most appropriate sentence, certain other aspects of a plea acceptance were not present. Thus, even if Judge Russo could be said to have "accepted" the plea in some preliminary sense, it is clear that he never finally or unconditionally accepted the plea, as would be required for true acceptance of the plea. *McIntosh*, 580 F.3d at 1227. For instance, during the course of the admonishments, it became clear that the parties did not agree on the minimum punishment faced by the defendant: the State believed that the minimum sentence was two days in jail, while the defendant argued that the minimum was conditional discharge. This disagreement was premised in part on whether the factual basis for the plea included the defendant's blood test result. However, Judge Russo merely noted this disagreement without resolving it. As a result, the defendant was never admonished about the actual minimum sentence for the offense.

¶ 45     Further, Judge Russo never asked the State for the factual basis for the charge to which the defendant pled. Although the State provided (in the course of arguing about an appropriate sentence) a general description of the events surrounding the defendant's arrest, Judge Russo did not appear to accept this version of events as a factual basis for the plea–the State's description included the facts that the defendant's BAC was 0.208 and that he had a prior DUI, but Judge Russo's comments indicated that he did not believe that the defendant's sentence would have to include the two days in jail required by those facts. See 625 ILCS 5/11-501(c)(5) (West 2012). Moreover, the State's description included the fact that the defendant's previous DUI had resulted in great bodily harm. If the State's description was the equivalent of a factual basis for the plea, those facts indicated that the defendant had committed a felony, not a misdemeanor.

¶ 46     Finally, there is the manner in which Judge Russo conducted the plea proceeding. Although his inquiries touched on several aspects of an ordinary plea proceeding, the only

_____

[2]Although this position–that jeopardy does not attach to a guilty plea until the final judgment and sentence have been entered–was rejected by our supreme court in *Jackson*, the New Mexico Supreme Court is not alone in adopting it. In addition to the federal cases cited within *Angel*, several state courts follow the same rule. See, *e.g.*, *State v. Burris*, 40 S.W.3d 520 (Tenn. Crim. App. 2000) (jeopardy does not attach until final judgment and sentence; until then, trial court is free to withdraw its acceptance of a guilty plea); *Myers v. Frazier*, 319 S.E.2d 782 (W. Va. 1984) (where trial court had orally accepted plea of *nolo contendere* and pronounced sentence but no written judgment had been entered and the defendant had not yet begun serving sentence, trial court could reject the plea agreement and allow the defendant to plead anew).

ruling he issued prior to the State's motion to nol-pros the charges was that the warrant for the defendant's arrest would be quashed. Judge Russo then passed the case a few times to allow himself or the parties to explore different aspects of the case, indicating that he had not yet reached a final decision regarding the defendant's proffered guilty plea to misdemeanor DUI. The plea hearing had not concluded at the point when the State moved to nol-pros the charges and Judge Russo granted that motion. Judge Russo's comments about allowing the defendant to withdraw his guilty plea (a likely reference to the procedure established by Illinois Supreme Court Rule 402(d)(2) (eff. July 1, 2012) for when a trial judge conditionally concurs in a tentative plea agreement but later withdraws that concurrence) were inartfully phrased in light of the fact that the motion to terminate the plea proceeding came from the State, but his intentions and ruling were clear: he would not accept the defendant's guilty plea.

¶ 47    The dissent argues that the omissions of the factual basis and admonishments about the actual minimum sentence for the offense do not show that "the trial court could not or did not accept defendant's plea." *Infra* ¶ 76. While this is true, it remains equally true that the trial court was not required to accept the defendant's plea. That being so, we cannot see how the defendant gained any expectation of finality merely from the fact that the trial court began to discuss sentencing issues during the same hearing.

¶ 48    Accordingly, the trial court in the subsequent felony prosecution erred in dismissing the indictment on the basis that Judge Russo had accepted the defendant's guilty plea and placed the defendant in jeopardy. Any "acceptance" of the plea was preliminary rather than unconditional, and thus the defendant was never placed in jeopardy. See *Santiago Soto*, 825 F.2d at 620 (defendant was "not placed in jeopardy in any meaningful sense" when trial court preliminarily accepted but then rejected guilty plea during same hearing).

¶ 49                    C. Did Jeopardy "Terminate Improperly"?

¶ 50    Even if jeopardy had attached during the plea proceeding, the defendant's prosecution for felony DUI would be barred only if jeopardy "terminated improperly." See 720 ILCS 5/3-4(a)(3) (West 2012) ("A prosecution is barred if the defendant was formerly prosecuted for the same offense, *** if that former prosecution: *** was terminated improperly after *** a plea of guilty was accepted ***."). In *Cabrera*, 402 Ill. App. 3d at 449-54, the First District recently considered the concept of proper and improper termination of jeopardy. There, the trial court initially accepted the defendant's guilty plea but then vacated the plea during the same proceeding after the defendant asserted his innocence. The *Cabrera* court began its analysis by noting that, although the analogy is not perfect,[3] the midstream termination of a guilty plea proceeding is comparable to the termination of a jury or bench trial through the declaration of a mistrial: "[J]ust as a jury or bench trial may terminate properly, allowing for

_____

[3] As the court explained in *Cabrera*, 402 Ill. App. 3d at 450 n.1, the termination of a guilty plea proceeding is not necessarily governed by the "manifest necessity" standard applicable to the declaration of a mistrial. See *Santiago Soto*, 825 F.2d at 619 (holding that, under the Supreme Court's decision in *Johnson*, manifest necessity is not necessary "to warrant a judicial vacation of a guilty plea"). However, following either the termination of a guilty plea proceeding or the declaration of a mistrial, a retrial may be justified to preserve " 'society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws.' " *Richardson v. United States*, 468 U.S. 317, 324 (1984) (quoting *Arizona v. Washington*, 434 U.S. 497, 509 (1978)).

- 13 -

retrial when, for example, 'manifest necessity' compels such an outcome [citation], by implication, if the original guilty plea hearing is terminated properly under Illinois law, a successive prosecution is not barred ***." *Id.* at 449. The court then held that, because Illinois law grants a trial court the power to reject a guilty plea where the defendant asserts his innocence (see *People v. Peterson*, 311 Ill. App. 3d 38, 43-44 (1999)), the trial court's mere acceptance of the defendant's guilty plea–an acceptance that the trial court withdrew during the same hearing–did not "improperly terminate" the plea proceeding or raise a double jeopardy bar to the subsequent prosecution. *Cabrera*, 402 Ill. App. 3d at 453.

¶ 51    Illinois law does not limit the trial court's power to reject a guilty plea to situations in which a defendant asserts his innocence. See, *e.g.*, Ill. S. Ct. R. 402(d)(2) (eff. July 1, 2012) (prescribing procedure by which, prior to sentencing, a trial judge may "withdraw[ ] his or her concurrence or conditional concurrence" in a proposed disposition pursuant to a plea agreement); *People v. Ventsias*, 2014 IL App (3d) 130275, ¶ 15 (where defendant sought to enter an invalid guilty plea to a charge of which he had been previously acquitted and State sought to nol-pros another charge, trial court properly terminated the plea proceeding, vacated the plea, and set the nol-prossed charge for trial, and double jeopardy did not bar the prosecution on the nol-prossed charge); *cf. People v. White*, 2011 IL 109616, ¶ 23 (factual basis for the plea, in conjunction with statutory requirements, controls the sentence a trial court is authorized to impose, not the parties' agreement; if facts disclosed during the factual basis require a sentence other than that agreed to, the trial court should reject the plea agreement).[4] Further, under Illinois law, the State may amend the charges against the defendant at any time prior to trial, including any amendments necessary to make the charges comply with the requirement that a charge advise the defendant that the State seeks an enhanced sentence. 725 ILCS 5/111-3(d) (West 2012); see also *City of Champaign v. Sides*, 349 Ill. App. 3d 293, 303 (2004) (State's amendment of defective charge was permissible where it was timely and did not unduly prejudice defendant).

¶ 52    In this case, the State and the trial court realized during the initial plea hearing that the offense amounted to felony DUI rather than the misdemeanor with which the defendant had been charged. The State argues that, as in *White*, this meant that the trial court was required to reject the plea agreement as invalid. This decision does not go so far; *White* itself noted that the State retains ample latitude to charge defendants as it sees fit. *White*, 2011 IL 109616, ¶ 25; see also *id.* ¶ 34 (Theis, J., specially concurring). Rather, where (as here) the State's motion to nol-pros charges to which a defendant had begun to plead guilty is not brought for an improper reason, a trial court may properly terminate the plea proceeding, vacate the plea, and grant the State's motion without violating the policies that underlie the double jeopardy protection. Under these circumstances, the defendant here did not face " 'the unfair harassment of successive trials' " (*McCutcheon*, 68 Ill. 2d at 106 (quoting *Goldman*, 352 F.2d at 266)), and double jeopardy did not bar the subsequent prosecution of the defendant.

---

[4] There is substantial federal case law to the same effect. See, *e.g.*, *United States v. Valenzuela-Arisqueta*, 724 F.3d 1290, 1296 (9th Cir. 2013) (even if jeopardy had attached when trial court accepted guilty plea without an adequate colloquy, jeopardy did not terminate improperly were trial court later rejected the plea as invalid); *United States v. Lucas*, 429 F.3d 1154, 1158 (7th Cir. 2005) (trial court did not err in rejecting guilty plea where factual basis did not show that the defendant was guilty of the offense charged).

¶ 53                                    III. CONCLUSION

¶ 54        The judgment of the circuit court of Du Page County dismissing the indictment is reversed and the cause is remanded for further proceedings.

¶ 55        Reversed and remanded.

¶ 56        JUSTICE ZENOFF, specially concurring.

¶ 57        I agree with Justice Schostok that we must reverse the trial court's dismissal of the indictment and remand the cause. However, I disagree that *Talandis* allows us to reverse and remand on the merits. As Justice Schostok's opinion demonstrates–and as Justice Hudson's dissent confirms–this issue, like most issues of first impression, is not easily decided. Thus, *Talandis* prohibits us from purporting to resolve the issue definitively. Instead, because justice does not demand that we advocate for defendant, we must determine merely whether the State has shown *prima facie* reversible error supported by the record. Because the State has satisfied that burden, we should reverse and remand on that basis alone.

¶ 58        In *Talandis*, the supreme court set out the now oft-repeated options from which we must choose when the appellee does not file a brief:

> "[1] We do not feel that a court of review should be compelled to serve as an advocate for the appellee or that it should be required to search the record for the purpose of sustaining the judgment of the trial court. It may, however, if justice requires, do so. [2] Also, it seems that if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief, the court of review should decide the merits of the appeal. [3] In other cases if the appellant's brief demonstrates *prima facie* reversible error and the contentions of the brief find support in the record the judgment of the trial court may be reversed." *Talandis*, 63 Ill. 2d at 133.

¶ 59        Here, Justice Schostok chooses the second option, deciding the merits of the appeal. She observes, and I agree, that the record is simple: the trial court's plea hearing lends itself to easy summary. She then notes, and I agree, that "the sole issue on appeal is the legal effect of [the trial court's] words and actions." *Supra* ¶ 20. However, she then asserts: "Although this is a matter on which principled persons may differ (as demonstrated by Justice Hudson's dissent, *infra*), I believe that it is not so complex a legal issue that we cannot proceed without the aid of an appellee's brief." *Supra* ¶ 20.

¶ 60        This last assertion appears internally contradictory. Naturally, if this issue were so simple that we could "easily" decide it, presumably we could agree on how to decide it. Principled persons tend not to differ on simple things. But we differ on this issue, and the obvious reason why we differ is that "the legal effect of [the trial court's] words and actions" is anything but simple.

¶ 61        Ironically, though, even Justice Schostok's own opinion betrays the issue's complexity. After asserting that the issue is simple enough to decide on the merits, she observes that "Illinois law has not defined the point at which a trial court is deemed to have 'accepted' a guilty plea," *i.e.*, that the issue is one of first impression in this state. *Supra* ¶ 27. Accordingly, she discusses various foreign authorities. Significantly, none of those authorities is cited by the

- 15 -

State; Justice Schostok conducts this review entirely independently.[5] Further, as she points out, those authorities are not consistent in how they approach this issue; she thus asserts only that "[s]ubstantial authority suggests" that the trial court here did not accept the plea. *Supra* ¶ 35. And indeed, given the peculiarities of the facts here–as the State points out, the plea hearing was "nonlinear"–none of those authorities is squarely on point. In light of all this, it is difficult to see how Justice Schostok can conclude that "it is clear" that the trial court did not accept the plea. *Supra* ¶ 44. But in any event, it is hard to say that the conclusion was easily reached.

¶ 62 It goes without saying that "[t]he American legal system is premised on the adversarial process." *Ventress v. Japan Airlines*, 747 F.3d 716, 724 (9th Cir. 2014) (Bea, J., concurring in part). That process allows the court not only to maintain its proper role as the "neutral arbiter of matters the parties present" (*Greenlaw v. United States*, 554 U.S. 237, 243 (2008)), but also to avoid error resulting from the underdevelopment of those matters (*Hill v. Kemp*, 478 F.3d 1236, 1251 (10th Cir. 2007)).

¶ 63 As an issue becomes more complex, those concerns become more important. In attempting to resolve a complex issue, without the issue's adversarial development, the court is all the more likely to abandon its neutral role, to resolve the issue erroneously, or both. This is precisely why *Talandis* instructs us not to decide the merits of such issues in such circumstances. And indeed, when facing first-impression issues, this court previously has adhered to that instruction. See, *e.g.*, *Village of Mundelein v. Bates*, 2012 IL App (2d) 110764-U, ¶ 5 ("Because, as will be explained, there is at least an arguable distinction between this case and any other heretofore decided in Illinois, we do not believe that a disposition on the merits is appropriate without defendant's participation."); *People v. Hoarde*, 2011 IL App (2d) 100806-U, ¶ 4 (same). Although Justice Schostok purports to cite "ample authority" to the contrary (*supra* ¶ 20), none of those cases is persuasive. In *Brzowski*, 2014 IL App (3d) 130404, ¶ 15, the Third District quoted the *Talandis* options and then flatly observed that "[t]he standard announced in *Talandis* will guide our review in this case"; the court offered no analysis of how that standard applied to first-impression issues generally or to the specific issue at hand. In *Sanjuan-Moeller*, 343 Ill. App. 3d at 205, this court did likewise; our entire discussion of *Talandis* consisted of our statement that, "[a]lthough we are without an appellee brief, we will nonetheless consider the appeal under the standards enunciated in [*Talandis*]." Finally, in *Pinkston*, 325 Ill. App. 3d at 214, we stated that, despite the respondent's failure to file a brief, we would decide the appeal "because the issues can be decided without the aid of respondent's brief"; we failed to acknowledge that *Talandis* requires not that the issues "can be decided" but that they can be decided *easily*. Justice Schostok cites no decision that explicitly deems a first-impression issue "easily decided" under *Talandis*. In any event, as I noted, even if *some* first-impression issues can be easily decided, clearly *this* first-impression issue cannot.

¶ 64 Because this case presents an issue that we cannot (and do not) easily decide, *Talandis* requires us to choose a different option. As noted, the first option, available only where justice

---

[5]Contrary to Justice Schostok's inference, I do not suggest that it is inherently improper for us to conduct independent research; as she observes, we do it all the time. I raise this point only because the extraordinary *breadth* of her independent research is wholly at odds with her assertion that, per *Talandis*, she is easily deciding a simple issue. *Cf. Benton*, 322 Ill. App. 3d at 959-61 (issue required very little "independent research," none of it beyond Illinois).

so requires, is to serve as the appellee's advocate or search the record for the purpose of affirming the trial court's judgment. Here, the prerequisite for this option is not satisfied. In the trial court, defendant was represented by private counsel. On appeal, counsel moved to withdraw, asserting that defendant had not retained counsel for the appeal. We granted that motion. Defendant did not subsequently retain different counsel or appear *pro se*. Faced with this record, justice does not compel us to advocate on defendant's behalf.

¶ 65    That leaves the third option: reversing if the appellant's brief shows *prima facie* reversible error, supported by the record. " 'Prima facie means, "at first sight, on the first appearance, on the face of it, so far as can be judged from the first disclosure; presumably; a fact presumed to be true unless disproved by some evidence to the contrary." [Citation.]' " *Talandis*, 63 Ill. 2d at 132 (quoting *Harrington v. Hartman*, 233 N.E.2d 189, 191 (Ind. App. 1968)). Thus, if the State, in light of the record, has shown what looks to be reversible error "at first sight"–regardless of what further inquiry might reveal–we must reverse on that basis. The State has satisfied that burden.

¶ 66    The State notes that Rule 402 requires certain formalities without which the trial court "shall not accept a plea of guilty." Ill. S. Ct. R. 402(a) (eff. July 1, 2012). The State further notes, and the record confirms, that the trial court here did not complete those formalities. The State thus concludes that the trial court, which of course is presumed to have known the law (*People v. Howery*, 178 Ill. 2d 1, 32 (1997)), had not yet accepted defendant's plea when the State moved for the *nolle prosequi*. This argument, at least "at first sight," demonstrates that the trial court reversibly erred in dismissing the indictment.

¶ 67    Justice Hudson counters that, because the trial court "had begun to impose a sentence upon defendant," the trial court's failure to comply with Rule 402 means only that the court accepted the plea invalidly, not that the court did not accept the plea. *Infra* ¶ 76. This is a reasonable counterargument that defendant might well have made, and, had he made it, I myself might well have considered adopting it. However, under *Talandis*'s third option, it is not our province to articulate and evaluate the various arguments that might counter the State's *prima facie* case for reversal. If the State makes that *prima facie* case, we are to stop.

¶ 68    Because the trial court essentially collapsed the entry of the plea and the imposition of the sentence into a single "nonlinear" proceeding–a practice that trial courts should take great care to avoid repeating–it is simply unclear when, if ever, the plea phase ended. For all we know, but for the State's motion for the *nolle prosequi*, the trial court might have articulated the sentence, swung around to validate the plea, and only then entered final judgment. Thus, on this record, the State reasonably invokes the procedure by which a plea is validly accepted–the procedure under Rule 402–and reasonably posits that, in the absence of that procedure, the trial court did not accept the plea. If nothing else, to me that is a *prima facie* case for reversal, and it is on that basis, and *only* that basis, that we should reverse and remand this cause.


¶ 69    JUSTICE HUDSON, dissenting.

¶ 70    I wholly acknowledge the wealth of authority Justice Schostok marshals in support of her position; nevertheless, I simply cannot agree that a guilty plea has not been "accepted" by the time a court begins to pronounce a sentence against a defendant. Justice Schostok correctly points out that, in this state, jeopardy attaches when a plea is accepted. *People v. Jackson*, 118 Ill. 2d 179, 188-89 (1987), *overruled on other grounds by People v. Stefan*, 146 Ill. 2d 324,

336-37 (1992). Further, as Justice Schostok points out, our supreme court has not defined when a plea is "accepted." See, *e.g.*, *People v. Bellmyer*, 199 Ill. 2d 529, 540 (2002).

¶ 71 Nevertheless, the one thing our supreme court has made clear is that jeopardy attaches upon the acceptance of a guilty plea. *Bellmyer*, 199 Ill. 2d at 540; *Jackson*, 118 Ill. 2d at 188-89; *People v. McCutcheon*, 68 Ill. 2d 101, 106 (1977). Thus, any foreign authority holding that jeopardy does not attach until after sentencing is plainly inapposite. See, *e.g.*, *State v. Angel*, 2002-NMSC-025, 132 N.M. 501, 51 P.3d 1155. Moreover, our supreme court's focus on whether a plea is accepted leaves little room for the consideration of policy matters underlying a defendant's double-jeopardy protections, such as the defendant's interest in finality and the possibility of overreaching by the State. See *State v. Thomas*, 995 A.2d 65, 76 (Conn. 2010). Instead, the sole issue is whether the plea was accepted.

¶ 72 In this case, a review of the transcript of the sentencing hearing clearly shows that, by the time the State moved to nol-pros the charges, the trial court was in the process of sentencing defendant. Since the court was sentencing defendant, *a fortiori*, it must have already accepted his plea. Indeed, the transcript reveals that the trial court had admonished defendant and defendant had indicated that he wished to persist in his plea. There was a disagreement about the minimum sentence, after which the trial court stated that the admonishments would stand. It then asked the State for recommendations regarding sentencing. After receiving recommendations from both sides, the court recessed.

¶ 73 When it reconvened, it stated to defendant, "You have a right to make any statements you wish me to consider before I impose sentence." Hence, it is apparent that the court recessed to consider sentencing matters rather than whether to accept the plea. After a colloquy with defendant, the court stated: "I've taken to heart the comments of your attorney, which would lead me to believe that maybe you are in a better place right now. However, it's not going to be an easy sentence." The State then interrupted and sought to nol-pros the charges, stating, "Your Honor, *before sentence is handed down*, the State is asking to withdraw its recommendation and nolle pros this case at this time *before sentence is rendered*." (Emphases added.) Clearly, the State also believed that this case had moved to the sentencing phase. I simply cannot agree that the plea had not been accepted by this point. See *State v. Isbell*, 38 P.3d 272, 274 (Or. Ct. App. 2001) (holding that a conviction precedes sentencing); *State v. Corno*, 876 P.2d 1186, 1189 (Ariz. Ct. App. 1994) (same).

¶ 74 Moreover, as I read *Jackson*, 118 Ill. 2d 179, it compels a finding that jeopardy attached in this case. The *Jackson* court held:

> "In our case, the defendant had been admonished as to the effect of his plea of guilty. He persisted in his plea of guilty and it was accepted by the court. Nothing further remained to be done to determine the defendant's guilt of the offense charged. Clearly, the defendant had been put in jeopardy as to the DUI and illegal transportation of alcohol offenses." *Id.* at 189.

The very same sequence occurred in this case; accordingly, the same result should follow. In discussing *Jackson*, Justice Schostok notes that "several weeks had elapsed before the State moved to nol-pros the charges." *Supra* ¶ 33. However, nowhere in the *Jackson* court's discussion of this issue did it mention this gap. Indeed, it set forth the relevant facts thusly: "the State had entered a *nolle prosequi* to that charge after the defendant's plea and before sentence had been imposed." *Jackson*, 118 Ill. 2d at 188. Again, this mirrors the facts of this case.

¶ 75        I also note that, following her discussion of pertinent Illinois law, Justice Schostok posits that "[t]he Illinois Supreme Court thus has not decided whether, when a trial court *begins to accept a guilty plea but then vacates that plea during the same hearing*, it has 'accepted' the plea so as to cause jeopardy to attach." (Emphasis added.) *Supra* ¶ 35. The issue, however, is whether the trial court had accepted defendant's plea. By assuming that the trial court had only *begun* to accept the plea, Justice Schostok has preordained her ultimate conclusion.

¶ 76        Indeed, the factors Justice Schostok subsequently cites to support her conclusion that the trial court had not accepted defendant's plea are not persuasive. She notes that defendant "was never admonished about the actual minimum sentence for the offense." *Supra* ¶ 44. Additionally, the State did not provide a factual basis for the plea. Such failures render a plea voidable rather than void. *People v. Speed*, 318 Ill. App. 3d 910, 915-16 (2001). Thus, while they might form a basis for a defendant to later attack a plea on appeal, it does not follow that the trial court could not or did not accept defendant's plea. This is particularly apparent in this case, as the trial court had begun to impose a sentence upon defendant. I also cannot agree that the manner in which the trial judge conducted the plea proceeding indicated that he had not accepted defendant's plea prior to sentencing. *Supra* ¶ 46. Once the trial court ruled that the "admonishments [would] stand" and asked the State for its recommendations, the focus of the proceeding was sentencing, at least until the State moved to nol-pros the charges.

¶ 77        Finally, I disagree that jeopardy was not terminated improperly. Justice Schostok's analysis of this issue is colored by her assumption that defendant had simply "begun to plead guilty." *Supra* ¶ 52. Moreover, I note that defendant objected to the State's motion to nol-pros the charges. Defendant's objection notwithstanding, the trial court ruled, "I am going to allow the Defendant to withdraw his plea of guilty and the motion of the State to nolle pros all counts." Interestingly, it does not appear from the record that defendant ever sought to withdraw his plea, so it is unclear what the trial court believed it was allowing.

¶ 78        Before closing, I will address Justice Zenoff's position that, under the third prong of *Talandis*, I should not be considering "a reasonable counterargument that defendant might well have made." *Supra* ¶ 67. This statement is correct only if we are proceeding under that prong. I agree with Justice Zenoff that the issue presented is not simple and that, consequently, the second prong is inapplicable. However, under the present circumstances, we should turn to the first prong rather than the third. *Cf.*, *e.g.*, *People v. Gomez*, 2011 IL App (1st) 092185, ¶ 55 (holding that we may affirm on any basis appearing in the record).

¶ 79        Justice Zenoff contends that the first prong of *Talandis* does not apply because "[d]efendant did not subsequently retain different counsel or appear *pro se*." *Supra* ¶ 64. Such circumstances would likely be attendant in most, if not nearly all, appeals in which a party fails to file a brief. What remains unclear is the reason defendant did not retain counsel or appear in his own name and file a brief. As such, while a lack of diligence would weigh against defendant to some degree, without knowing the reason it seems fundamentally unfair to attribute dispositive weight to this lone factor. Hence, I would also look to the nature of the right at issue and the magnitude of the invasion of defendant's interests. *Cf. In re Haley D.*, 2011 IL 110886, ¶ 69 ("[T]he overriding consideration, as we have already observed, is simply whether or not substantial justice is being done between the litigants and *whether it is reasonable, under the circumstances, to compel the other party to go to trial on the merits*." (Emphasis added.)).

¶ 80 Here, the record shows a violation of a fundamental constitutional protection. *People v. Ventsias*, 2014 IL App (3d) 130275, ¶ 16 ("[T]he protection against double jeopardy is so fundamental to the integrity of our justice system that it cannot be waived by a defendant ***."). The protection against double jeopardy is "one of the fundamental rights established by the Fifth Amendment." *Sanabria v. United States*, 437 U.S. 54, 78 (1978). Indeed, "the idea of double jeopardy is very old." *United States v. Wilson*, 420 U.S. 332, 339 (1975). Its protections were described by Lord Coke (*id*. at 340 (citing 3 Edward Coke, Institutes of the Laws of England, at 212-13 (6th ed. 1680))), and Blackstone called it a " 'universal maxim of the common law of England' " (*id*. (quoting 4 William Blackstone, Commentaries * 335-36)). Moreover, the consequences of an erroneous decision to a defendant are enormous. Thus, I believe that the interests of justice require us to proceed under the first prong of *Talandis*.

¶ 81 To conclude, common sense dictates that a plea must be accepted before a sentence is imposed. That is precisely what occurred here.