(No. 92323)

## THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DAVID BELLMYER, Appellee.

*Opinion filed May 23, 2002.*

James E. Ryan, Attorney General, of Springfield, and Marshall E. Douglas, State's Attorney, of Rock Island (Joel D. Bertocchi, Solicitor General, William L. Browers and Jay Paul Hoffmann, Assistant Attorneys General, of Chicago, and Norbert J. Goetten, John X. Breslin and Gary F. Gnidovec, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Robert J. Agostinelli, Deputy Defender, and Carrie B. Marche, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

Defendant, David Bellmyer, was charged with first degree murder (720 ILCS 5/9—1(a) (West 1998)) in the circuit court of Rock Island County. Defendant raised the affirmative defense of insanity. After the parties presented evidence in a stipulated bench trial, the trial court found that the stipulated evidence was insufficient to make a decision regarding defendant's insanity defense. Defendant moved to dismiss the charged offense based on double jeopardy grounds. The trial court denied the motion and subsequently set the matter for a full trial.

Defendant brought an interlocutory appeal to the appellate court. See 188 Ill. 2d R. 604(f). The court held

that jeopardy had attached at the stipulated bench trial and that double jeopardy barred a second prosecution. The appellate court reversed the trial court's denial of defendant's motion to dismiss the charges. 323 Ill. App. 3d 269.

We allowed the State's petition for leave to appeal. 177 Ill. 2d R. 315(a). We now reverse the appellate court and remand the cause to the trial court for further proceedings.

## BACKGROUND

The charges at issue in this case arise from the January 24, 1999, shooting death of George Bellmyer (hereafter victim). Defendant, the victim's son, was arrested, taken to the Rock Island County sheriff's department and advised of his *Miranda* rights. He invoked his right to counsel. On January 25, 1999, defendant was charged in an information with two counts of first degree murder (720 ILCS 5/9—1(a)(1), (a)(2) (West 1998)). In his first court appearance, also on that date, the court advised defendant that he had a right to an attorney and warned him of the possibility of trial *in absentia*. The court also set bond and informed defendant of the date of his preliminary hearing. Because defendant appeared not to understand these actions, the State moved for a fitness hearing to determine if defendant was fit to plead or stand trial. The court granted the State's motion and appointed Dr. Eric Ritterhoff to conduct the fitness examination.

On February 22, 1999, Dr. Ritterhoff submitted a report to the trial court and, on March 5, testified at a fitness hearing. Dr. Ritterhoff concluded that defendant was not fit to plead or stand trial at that time, but that he would be fit within one year.

Defendant was remanded to the custody of the Illinois Department of Human Services, which periodically submitted written mental health evaluations of defen-

dant. In its third report to the court, dated August 25, 1999, the Department concluded that defendant was fit to stand trial. At a fitness hearing on September 1, 1999, defendant and the State stipulated that defendant was fit to stand trial. The trial court reviewed the third written report and, based thereon, found defendant fit to stand trial.

On November 8, 1999, defendant moved for a continuance so that he could be examined to determine whether the insanity defense was available to him at trial. Defendant and the State agreed that Dr. Robert Chapman would examine defendant on the issue of sanity. On November 30, defendant filed notice that he intended to raise the affirmative defense of insanity. Attached to his notice was Dr. Chapman's written report, in which he concluded that defendant was insane at the time of the shooting.

In response, on December 6, 1999, the State sought a continuance for a second opinion on the issue of sanity from Dr. Kirk Witherspoon. In a written report dated December 24, 1999, Dr. Witherspoon also concluded that defendant was insane when he shot the victim. On January 6, 2000, defendant and the State informed the court that because both of their experts opined that defendant was insane at the time of the offense, the parties would proceed via a stipulated bench trial. Defendant waived his right to a jury trial. After questioning, the trial court found that defendant's jury waiver was knowing and voluntary.

On February 29, 2000, the trial court heard opening statements, received stipulated evidence, and heard closing arguments. The parties agreed to the following facts at the stipulated bench trial. In January 1999, defendant and his daughter, April, lived in the home of his parents in Coal Valley. During this time, the victim was recovering from a leg injury and was using a wheelchair. Also, defendant had begun to carry a handgun.

On January 22, defendant was arrested for disorderly conduct and spent the night in the county jail. No charges were filed against defendant with respect to the arrest, and defendant was released the next day. When defendant returned home on January 23, he became angry because he could not find his gun, and argued with his parents. The victim returned the handgun to defendant, who calmed down, went to his room, and repeatedly cleaned the gun. Also on that day, defendant complained to his brother, Gary, of having experienced a "bad trip" from illegal narcotics he had been taking.

Between 1 a.m. and 3 a.m. on January 24, defendant had an argument with his girlfriend, Katherine McCollom, who lived with him at his parents' home. Defendant pointed a gun at McCollom and demanded that she mop the floors. She complied, while defendant paced back and forth.

Later that morning, defendant again cleaned his gun and placed it under the couch in the living room. He forgot where he had put it and became infuriated. At approximately 1:30 p.m., Gary, who lived across the street from the house, went to his parents' home. Defendant's mother and the victim were in the living room and appeared frightened. Defendant was looking for his gun and appeared nervous and agitated. Gary returned to his home. When defendant found the handgun, he began to point it at his mother, the victim, and McCollom. He did not point the gun at his daughter, April, who was also present. He told April to go to the basement. She complied, but returned to the living room and saw what transpired.

Defendant hit the victim with the gun on the head and the leg. Defendant's mother and April escaped through a window and fled to Gary's home. They told Gary that defendant was beating the victim with a gun. Police were called.

Defendant then kicked the victim's wheelchair out from under the victim and continued to beat him with the gun. McCollom then escaped through the window as well, leaving defendant and the victim in the house alone.

The first law enforcement officials to arrive at the scene saw McCollom run from the victim's home across the street to Gary's residence. A short time later, officials heard three shots being fired from inside the victim's residence. For approximately the next hour, police attempted, via a public address system, to persuade defendant to exit the house. During this time they heard multiple shots being fired inside the home.

At approximately 5 p.m., law officers forced their way into the house through the back door. They found the victim's body on the floor inside the back porch. Defendant was siting on a couch in his bedroom with a handgun beside him.

An autopsy disclosed that the victim had died as a result of three gunshot wounds to the head. Further, it was determined that the bullets recovered during the autopsy were fired from the gun found next to defendant.

The parties agreed that the State could prove the charged offenses beyond a reasonable doubt. However, the parties disagreed as to whether defendant was sane at the time of the shooting or should be found not guilty by reason of insanity. Accordingly, the State and defendant stipulated as to the evidence pertaining to the issue of sanity, but not to the sufficiency of the evidence to find defendant insane.

The State contended that despite the reports of Drs. Chapman and Witherspoon, the court should find defendant either guilty or guilty but mentally ill. Pointing to the facts that defendant had argued with his parents and McCollom the day before the shooting and had been cleaning his gun, the State argued that defendant had

planned the incident. The State also argued that defendant, by not pointing the gun at his daughter and ordering her to go to the basement, knew that his actions were wrong.

The defense, in its closing argument, emphasized that Drs. Chapman and Witherspoon both concluded that defendant was insane at the time of the shooting. Both found that defendant suffered from "schizoaffective disorder, bi-polar type"; both agreed that, due to this mental condition, defendant could not appreciate the criminality of his conduct. The defense contended that the trial court should find defendant not guilty by reason of insanity.

After hearing closing arguments, the court noted that it had questions regarding the qualifications of Dr. Witherspoon. The court also expressed concern regarding the lack of evidence of how defendant acted prior and subsequent to the shooting. The court asked the State to submit additional information regarding these matters. Complying with this request, the parties presented additional stipulated evidence pertaining to Dr. Witherspoon's qualifications and defendant's behavior from the time of the shooting until the time of his arrest and the appointment of the public defender.

On April 7, 2000, the court held a hearing at which it was expected that the court would render its judgment. However, the judge complained that, despite the additional information, the stipulated evidence was not adequate or sufficient to determine the issue of defendant's sanity at the time of the shooting. "Many things the Court needs to see and hear simply do not come out through a written stipulation." The court stated that it needed to see the demeanor of defendant as he testified regarding his behavior, or see the demeanor of witnesses who observed defendant's behavior, prior and subsequent to the shooting. The trial court explained that the credibility of witnesses was very important in deciding this

issue and that stipulated evidence did not provide the court with an opportunity to judge credibility. Accordingly, the court refused to enter a ruling.

On April 12, 2000, defendant filed a motion to compel a finding. The State did not object to the motion and agreed with defendant that the stipulations contained all of the available information. Both parties agreed that they could not provide the court with any additional evidence and that nothing would be added by cross-examining the witnesses. The trial court stated that much more could be brought out in a full trial and denied the motion to compel a finding.

Defendant also filed a motion to dismiss the charged offense of murder based on double jeopardy. The State objected to this motion, and the trial court denied the motion and a subsequent motion to reconsider. The trial court thereafter allowed defendant to withdraw his jury waiver and set the matter for a jury trial.

Defendant brought an interlocutory appeal to the appellate court. See 188 Ill. 2d R. 604(f). The appellate court, with one justice dissenting, held that jeopardy attached at the stipulated bench trial and that double jeopardy barred a second prosecution. The appellate court reversed the trial court's order, which had denied defendant's motion to dismiss the charged offense based on double jeopardy. 323 Ill. App. 3d at 275-77. The dissenting justice opined that jeopardy had not attached at the stipulated bench trial and, consequently, double jeopardy did not bar a second prosecution. 323 Ill. App. 3d at 277 (Holdridge, J., dissenting). The State appeals to this court.

## DISCUSSION

The double jeopardy clause of the fifth amendment to the United States Constitution, made applicable to the states through the fourteenth amendment, provides that no person shall "be subject for the same offence to be

twice put in jeopardy of life or limb." U.S. Const., amends. V, XIV. The same protection is afforded by the Illinois Constitution (Ill. Const. 1970, art. I, § 10) and by statute (720 ILCS 5/3—4(a) (West 1998)). The clause protects against a second prosecution for the same offense after acquittal or conviction, and it protects against multiple punishments for the same offense. *United States v. Wilson*, 420 U.S. 332, 342-43, 43 L. Ed. 2d 232, 241, 95 S. Ct. 1013, 1021 (1975), quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 23 L. Ed. 2d 656, 665, 89 S. Ct. 2072, 2076 (1969). As the Court in *Wilson* explained:

"When a defendant has been acquitted of an offense, the Clause guarantees that the State shall not be permitted to make repeated attempts to convict him, 'thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' " *Wilson*, 420 U.S. at 343, 43 L. Ed. 2d at 241, 95 S. Ct. at 1022, quoting *Green v. United States*, 355 U.S. 184, 187-88, 2 L. Ed. 2d 199, 204, 78 S. Ct. 221, 223 (1957).

To determine whether a retrial would violate a defendant's right to be free from double jeopardy, the reviewing court must determine: (1) whether the defendant was placed in jeopardy during the first proceeding; and (2) if so, whether the defendant can nevertheless be retried. *People ex rel. Mosley v. Carey*, 74 Ill. 2d 527, 534-35 (1979). In this case, because this issue involves the application of law to uncontested facts, our review of the decision of the trial court is *de novo. People v. Mitchell*, 165 Ill. 2d 211, 230 (1995).

The protections against double jeopardy are triggered only after the accused has been subjected to the hazards of trial and possible conviction. "In criminal proceedings—whether the trier of fact is a jury or a judge—'courts have found it useful to define a point *** at which the constitutional purposes and policies are implicated by resort to the concept of "attachment of jeopardy." ' "

*People v. Shields*, 76 Ill. 2d 543, 546 (1979), quoting *Serfass v. United States*, 420 U.S. 377, 388, 43 L. Ed. 2d 265, 274, 95 S. Ct. 1055, 1062 (1975). Indeed, the time when jeopardy attaches serves as the lynchpin for all double jeopardy jurisprudence. *Crist v. Bretz*, 437 U.S. 28, 38, 57 L. Ed. 2d 24, 33, 98 S. Ct. 2156, 2162 (1978). Thus, "[t]he starting point in any double jeopardy analysis, of course, is determining whether or not jeopardy had attached." *Mosley*, 74 Ill. 2d at 534.

In Illinois, jeopardy attaches in a jury trial when the jury is empaneled and sworn. *Shields*, 76 Ill. 2d at 546. In a bench trial, jeopardy attaches " 'when the first witness is sworn and the court begins to hear evidence.' " *People v. Ortiz*, 151 Ill. 2d 1, 9-10 (1992), quoting *People v. Deems*, 81 Ill. 2d 384, 389 (1980). Finally, jeopardy attaches to a guilty plea when the guilty plea is accepted by the trial court. *People v. McCutcheon*, 68 Ill. 2d 101, 106 (1977); see generally 5 W. LaFave, J. Israel & N. King, Criminal Procedure § 25.1(d), at 640-43 (2d ed. 1999).

In the present case, the State argues that "a stipulated bench trial is more similar to a guilty plea than to an actual bench trial." Therefore, according to the State, jeopardy did not attach to defendant's proceeding because the trial court ultimately rejected the stipulations. In contrast, defendant argues that the proceeding was a bench trial. Therefore, according to defendant, jeopardy attached when the court received and considered the stipulated evidence. This was the view taken by the appellate court. 323 Ill. App. 3d at 276.

The controlling principles are quite settled. A stipulated bench trial is not tantamount to a guilty plea if the defendant presented and preserved a defense. *People v. Horton*, 143 Ill. 2d 11, 20, 22 (1991); accord 2 R. Ruebner, Illinois Criminal Procedure § 5.46, at 170 (3d ed. 1999). However, when a defendant in a stipulated bench trial stipulates not only to the evidence, but also to the

sufficiency of the evidence to convict, the proceeding is tantamount to a guilty plea. *Horton*, 143 Ill. 2d at 22.

When a defendant raises an insanity defense, the State must prove beyond a reasonable doubt that defendant committed the charged offense. The defendant then carries the burden of proving by clear and convincing evidence that he or she is not guilty by reason of insanity. 720 ILCS 5/6—2(e) (West 1998); accord 2 R. Ruebner, Illinois Criminal Procedure § 5.29, at 105-06 (3d ed. 1999); 6 L. Pieczynski, Illinois Practice § 24.14, at 127 (1989). "When the defense can successfully show that the accused was insane at the time of the offense, the accused is relieved of any criminal responsibility even though the defense admits that the accused is the offending actor." 2 R. Ruebner, Illinois Criminal Procedure § 5.29, at 100 (3d ed. 1999).

The record reveals that this was the understanding at defendant's stipulated bench trial. The State sought a finding of guilty or guilty but mentally ill; defendant sought a finding of not guilty by reason of insanity. The trial court understood its role:

"So what is the issue the Court has to decide here? *** [T]he defendant's *** state of mind on January 24 of 1999, which is the date that the defendant killed his father, is at issue, and what the State and what the defense are requesting this Court to do is decide defendant's mental state *** based on the stipulations and the closing arguments."

In this case, defendant obviously presented a defense, *i.e.*, insanity. It is true, as the appellate court dissent observed, that defendant stipulated to the sufficiency of the evidence of the charged offense. 323 Ill. App. 3d at 277 (Holdridge, J., dissenting). Further, defendant stipulated to the evidence pertaining to the issue of sanity. However, the parties expressly and repeatedly stated that they were not stipulating to the sufficiency of the evidence on the issue of insanity. Rather, defendant sought a finding from the trial court of not guilty by reason of

insanity. When the trial court is called upon to perform its function of determining guilt or innocence, no guilty plea is involved. *People v. Sullivan*, 72 Ill. App. 3d 533, 536 (1979).

Defendant's stipulated bench trial was a bench trial as opposed to a guilty plea. We agree with the appellate court that jeopardy attached at defendant's stipulated bench trial.

The appellate court posited that a judge in a bench trial must make a decision. In this case, since no additional evidence was available, the appellate court concluded that the trial court should have rendered a decision. The appellate court further held that the trial court's failure to do so cannot negate the attachment of jeopardy. The appellate court assumed that original jeopardy terminated and that double jeopardy would bar a second prosecution. 323 Ill. App. 3d at 276-77.

Under the unique circumstances of this case, we conclude that the trial court should have rendered a judgment. Defendant and the State did not present conflicting stipulations. On the issue of sanity, both experts agreed that defendant was insane at the time of the shooting. The parties agreed that cross-examination of the experts and other witnesses would not have adduced any additional evidence. Indeed, they agreed that they *could not* produce any additional evidence. Consequently, nothing would be gained from compelling the live testimony of the witnesses.

Pursuant to our supervisory authority, we remand the cause to the trial court with directions that the court decide the issue of defendant's sanity on the record before it. See *McDunn v. Williams*, 156 Ill. 2d 288, 300-02 (1993).

Our disposition of this case is not precluded by double jeopardy. Since defendant's original jeopardy has never terminated, he cannot be subject to double jeopardy. See

*Richardson v. United States*, 468 U.S. 317, 325, 82 L. Ed. 2d 242, 251, 104 S. Ct. 3081, 3086 (1984) (recognizing that the protection of the double jeopardy clause by its terms applies only if there has been some event which terminates the original jeopardy); *cf. Wade v. Hunter*, 336 U.S. 684, 93 L. Ed. 974, 69 S. Ct. 834 (1949).

Due to our disposition of this cause, we need not address the State's alternative contention. See, *e.g., People v. Redd*, 135 Ill. 2d 252, 327 (1990).

CONCLUSION

For the foregoing reasons, the judgment of the appellate court is reversed; the order of the circuit court of Rock Island County, which denied defendant's motion to dismiss the charged offense of murder, is affirmed; and the cause is remanded to the trial court for further proceedings consistent with this opinion.

*Appellate court judgment reversed;*
*circuit court order affirmed;*
*cause remanded.*