# Illinois Official Reports

## Appellate Court

---

### *People v. Markham*, 2019 IL App (3d) 180071

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ROBERT W. MARKHAM, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-18-0071 |
| Filed | April 24, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Tazewell County, No. 17-CF-277; the Hon. Stephen A. Kouri, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Stewart J. Umholtz, State's Attorney, of Pekin (Patrick Delfino, David J. Robinson, and Justin A. Nicolosi, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>James E. Chadd, Peter A. Carusona, and Matthew Lemke, of State Appellate Defender's Office, of Ottawa, for appellee.<br><br>Terry D. Slaw, of Rolling Meadows, and Albert L. Wysocki, of Waukegan, for *amicus curiae* Heroin Epidemic Relief Organization. |

Panel                    JUSTICE WRIGHT delivered the judgment of the court, with opinion.
                         Justices Lytton and McDade concurred in the judgment and opinion.


**OPINION**

¶ 1       In Tazewell County circuit court, defendant moved for dismissal of an unlawful possession of a controlled substance charge levied against him by the State, citing immunity from prosecution pursuant to section 414(c) of the Illinois Controlled Substances Act (Act) (720 ILCS 570/414(c) (West 2016)). The trial court granted defendant's motion to dismiss. The State appeals.

¶ 2                                I. BACKGROUND

¶ 3       On July 20, 2017, the State indicted Robert W. Markham for the offense of unlawful possession of a controlled substance pursuant to section 402(c) of the Act (*id.* § 402(c)). The indictment alleged defendant knowingly possessed a substance containing heroin on or about June 3, 2017. On October 23, 2017, defendant filed a motion to dismiss the charge based on the statutory immunity from prosecution provision of section 414(c) of the Act (*id.* § 414(c)).

¶ 4       On December 5, 2017, the trial court conducted a hearing on defendant's motion to dismiss. The parties submitted the following stipulated facts for the court's consideration:

"1. A female companion and the defendant used heroin;

2. After going out into the kitchen and playing with her phone for a few minutes, the female companion re-entered the bedroom and observed the Defendant sitting in the bed turning purple;

3. Defendant was suffering a drug overdose;

4. The female then called 911 and commenced CPR;

5. Tazewell County Deputies were dispatched to 608 Northern Oaks Drive, Groveland, IL, in regards to a possible drug overdose;

6. When Deputies arrived they found [defendant] non-responsive and not breathing, and they commenced performing CPR on him;

7. One Deputy observed a syringe on a bedside table near the television;

8. As [defendant] was being prepped to be moved from the room to the ambulance, he began breathing on his own, eventually regaining consciousness;

9. As [defendant] was being prepared to be transported to the hospital, he requested his wallet and house keys from out of the closet to take with him to the hospital;

10. Deputy McKinney went into the closet to gather [defendant's] wallet and keys;

11. Deputy McKinney found contraband (a rolled up dollar bill) sticking out of the wallet;

12. Inside the rolled up bill was a gray wrapper that appeared to be a gum wrapper which contained a grayish-white substance;

13. The grayish-white substance field tested positive for heroin;

14. That the amount of the substance recovered by law enforcement is within the amount identified in subsection (d) of 720 ILCS 570/414, which is less than 3 grams of a substance containing heroin;

15. That [defendant] is charged with Unlawful Possession of a Controlled Substance, 720 ILCS 570/402(c)[.]"

¶ 5 By agreement, the parties further supplemented the stipulated facts, listed above, to provide that "[t]he deputies were administering CPR, and at that time North Pekin officers arrived and administered two doses of Narcan to the defendant. The deputies continued the CPR. At that point [defendant's] pulse came back, but he was not breathing on his own. And then—and to clarify, paramedics then arrived, and paramedics administered the two subsequent doses of Narcan." Following arguments of the parties, the trial court took the matter under advisement.

¶ 6 On January 8, 2018, the trial court announced its ruling. The trial court granted defendant's motion to dismiss, finding "[t]he subject evidence was obtained as a result of medical treatment [the 911 caller] obtained for Defendant." The court additionally found "[t]he purpose of 720 ILCS 570/[414](c)[1] would not be served if a narrow construction would be applied in this context, thereby allowing the subject evidence to provide the basis of the pending charge."

¶ 7 On January 30, 2018, the State filed a certificate of impairment and the instant appeal.

¶ 8                                                    II. ANALYSIS

¶ 9 At issue in this appeal is whether law enforcement "acquired" the heroin in defendant's wallet "as a result" of defendant obtaining "emergency medical assistance" or whether law enforcement discovered the heroin after the "emergency medical assistance" concluded and defendant's condition became somewhat stable. According to the State's view, law enforcement obtained the contraband "as a result" of defendant's independent request for his keys and wallet rather than "as a result" of the earlier 911 call because defendant no longer required "emergency medical assistance" at the time the heroin was discovered. Consequently, the State urges this court to reverse the trial court's decision granting defendant's motion to dismiss the charge based on the finding that defendant was immune from prosecution under the Act.

¶ 10 For purposes of this appeal, the parties agree the undisputed facts establish defendant was experiencing an overdose at the time of the 911 call and, at that time, defendant personally possessed the requisite small amount of heroin required for immunity under the Act. Since the parties rely on undisputed facts in support of their respective positions, the case law provides for *de novo* review by this court. *People v. Bellmyer*, 199 Ill. 2d 529, 537 (2002).

¶ 11 Our analysis must begin with a brief review of the statutory language at issue. Section 414 of the Act, titled "Overdose; limited immunity from prosecution," provides:

"(a) For the purposes of this Section, 'overdose' means a controlled substance-induced physiological event that results in a life-threatening emergency to

---

[1]We note, and the State agrees, the trial court erroneously cited section 402(c) (720 ILCS 570/402(c) (West 2016)), the unlawful possession statute, in its order. The statute at issue is section 414 (*id.* § 414).

the individual who ingested, inhaled, injected or otherwise bodily absorbed a controlled, counterfeit, or look-alike substance or a controlled substance analog.

(b) A person who, in good faith, seeks or obtains emergency medical assistance for someone experiencing an overdose shall not be charged or prosecuted for Class 4 felony possession of a controlled, counterfeit, or look-alike substance or a controlled substance analog if evidence for the Class 4 felony possession charge was acquired as a result of the person seeking or obtaining emergency medical assistance and providing the amount of substance recovered is within the amount identified in subsection (d) of this Section.

(c) A person who is experiencing an overdose shall not be charged or prosecuted for Class 4 felony possession of a controlled, counterfeit, or look-alike substance or a controlled substance analog if evidence for the Class 4 felony possession charge was acquired as a result of the person seeking or obtaining emergency medical assistance and providing the amount of substance recovered is within the amount identified in subsection (d) of this Section.

\* \* \*

(e) The limited immunity described in subsections (b) and (c) of this Section shall not be extended if law enforcement has reasonable suspicion or probable cause to detain, arrest, or search the person described in subsection (b) or (c) of this Section for criminal activity and the reasonable suspicion or probable cause is based on information obtained prior to or independent of the individual described in subsection (b) or (c) taking action to seek or obtain emergency medical assistance and not obtained as a direct result of the action of seeking or obtaining emergency medical assistance." 720 ILCS 570/414 (West 2016).

¶ 12 The public act enacting section 414 of the Act includes a preamble stating, in relevant part:

"WHEREAS, Drug-overdose deaths are the second leading cause of accidental death in the nation and deaths have increased significantly in recent years, in both the Chicago Metropolitan Area and across Illinois; and

WHEREAS, The General Assembly finds that drug-overdose deaths could be substantially decreased if immunity from criminal prosecution for Class 4 felony violations of the Illinois Controlled Substances Act and Class 3 felony violations of the Methamphetamine Control and Community Protection Act were granted to a person possessing a small amount of the drug who, in good faith, seeks emergency medical assistance for someone experiencing a drug-related overdose and if this immunitywere granted for the same Class 4 felony violations of the Illinois Controlled Substances Act and the Class 3 felony violations of the Methamphetamine Control and Community Protection Act to a person who is experiencing a drug-related overdose[.]" Pub. Act 97-678, § 5 (eff. June 1, 2012) (adding 720 ILCS 570/414).

¶ 13 At this juncture, a brief recitation of the undisputed facts is in order. Both parties agree law enforcement was dispatched to the residence located at 608 Northern Oaks Drive, Groveland, Illinois, as a result of a good faith 911 call reporting a drug overdose. Defendant's female companion made the 911 call for life-saving assistance. Upon arrival at

that location, Tazewell County deputies, acting as first responders, entered the residence and found defendant unresponsive. The deputies immediately commenced cardiopulmonary resuscitation (CPR) on defendant. While the deputies continued CPR, two North Pekin officers arrived and administered two doses of Narcan to defendant. The deputies continued the CPR. At some undefined point, defendant's pulse came back, but defendant was not breathing on his own.

¶ 14       Then, paramedics arrived and administered two additional doses of Narcan to defendant. Eventually, defendant began breathing on his own and regained consciousness. Once conscious, defendant asked someone for his wallet and house keys, which were located in a nearby closet, while the first responders prepared defendant for transport to the hospital by ambulance.

¶ 15       Here, the State suggests the emergency ended before the discovery of the heroin by law enforcement. Based on these circumstances, the State submits that defendant cannot rely on the statutory immunity provisions of the Act once the true emergency requiring emergency medical assistance was resolved.[2] The State cites *People v. Teper*, 2016 IL App (2d) 160063, in support of its argument. In *Teper*, officers received numerous reports of a driver slumped over her steering wheel in traffic. *Id.* ¶ 8. Upon arrival at the scene, officers first observed several hypodermic syringes, and one officer observed two Baggies of a brown rock-like substance in the vehicle. *Id.* Based solely on the officer's observations of the defendant's physical appearance and the items in plain view inside the vehicle, the officers concluded the driver was likely experiencing an overdose and made the decision to administer Narcan. *Id.* In that case, the trial court determined that immunity from prosecution based on section 414 did not apply because "[t]he 'triggering fact' " for overdose intervention occurred after the officers observed suspected drugs and paraphernalia in plain view. *Id.* ¶ 12. In other words, the trial court found the officers were not summoned to the scene with knowledge of a drug overdose and developed probable cause to seize the contraband before realizing the driver was incapacitated due to a drug overdose. See *id.*

¶ 16       The Second District Appellate Court affirmed the trial court's ruling. *Id.* ¶ 46. The reviewing court opined that, because the contraband was clearly and immediately visible, thereby establishing independent probable cause prior to the defendant obtaining emergency medical assistance, the statutory exception to immunity from prosecution set forth in section 414(e) of the Act was triggered. *Id.* ¶¶ 34-39; 720 ILCS 570/414(e) (West 2016).

¶ 17       Unlike *Teper*, the initial 911 call here conveyed the urgent necessity for emergency medical services due to a drug overdose in progress, triggering statutory immunity from the outset. Further, emergency medical assistance was in progress when an officer discovered contraband. For these reasons, we find *Teper* is factually distinguishable from the case at bar.

¶ 18       The State contends the fact that defendant was physically able to make a request for his wallet and keys should have caused the trial court to conclude defendant was past the point of

_____

[2]We note that, on several occasions, the State's brief asserts that defendant specifically asked deputies to retrieve his wallet and keys from the closet and seems to attempt to draw some distinction from the fact that defendant specifically asked the deputies to perform this task. The stipulated facts agreed to by both parties make no mention of defendant specifically asking deputies to retrieve his wallet and keys, and it would thus be inappropriate for this court to state so. Moreover, we find this distinction irrelevant.

requiring emergency medical assistance. In fact, the State posits "it is impossible to argue defendant, at the moment he asked the question, was in need of emergency care."

¶ 19 The State's argument is not only unpersuasive, it rewrites history. Here, when law enforcement entered the residence at the address provided during the 911 call, defendant was unresponsive, not breathing, and was revived due to the administration of CPR and four doses of Narcan. Moreover, at the time of defendant's request for his wallet and keys, defendant was not out of danger as a result of the overdose since he was being "prepped" and "prepared" to be moved from the residence to a hospital by ambulance. Without this intervention at the residence and subsequent hospital care, it is likely that one more drug-related death would have been added to the already alarming state statistics.

¶ 20 We conclude the State's narrow interpretation of the statutory phrase "as a result" is flawed. The State's narrow interpretation would serve to eviscerate the undeniable purpose of the Act by discouraging those witnessing or experiencing an overdose from immediately calling for lifesaving emergency medical attention. In order for the Act to work and save lives as intended, those witnessing or experiencing a drug overdose must have immediate and absolute assurance that the courts will uphold the provisions of the Act by prohibiting prosecution for items observed by first responders at the scene after being summoned to that location to prevent a death by overdose. We hold that the Act provides broad and unconditional protection from the prying eyes of law enforcement present at the scene of an overdose, regardless of whether that location is a personal residence, a business, a vehicle, and so on.

¶ 21 For these reasons, with little guidance from existing precedent, we conclude the trial court correctly found that defendant was entitled to the immunities granted under section 414(c) of the Act because the heroin was discovered "as a result" of law enforcement entering the residence to provide emergency medical assistance as needed to prevent another needless death by overdose. The trial court's decision granting defendant's motion to dismiss is affirmed.

¶ 22                                III. CONCLUSION
¶ 23 The judgment of the circuit court of Tazewell County is affirmed.

¶ 24 Affirmed.