STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 KA 0309

STATE OF LOUISIANA

VERSUS

CHRISTINE JACKSON

Judgment Rendered:  NOV 1 6 2022

Appealed from the
Twentieth Judicial District Court
In and for the Parish of East Feliciana
State of Louisiana
Docket Number 21-CR-631

Honorable Kathryn E. Jones, Judge Presiding

************

Samuel C. D'Aquilla
District Attorney
Jessica B. Weimer
Assistant District Attorney
St. Francisville, LA

Counsel for Appellee,
State of Louisiana

Gwendolyn K. Brown
Baton Rouge, LA

Counsel for Defendant/Appellant,
Christine Jackson

*************

BEFORE:  WHIPPLE, C.J., GUIDRY, AND WOLFE, JJ.

Whipple, C.J. dissents and assigns reasons.

**GUIDRY, J.**

The State of Louisiana charged the defendant, Christine Jackson, by bill of information with possession of Alprazolam (Xanax), a violation of La. R.S. 40:969(C). The defendant pled *not* guilty. Following a hearing on a motion to quash the bill of information, wherein the court denied the motion, the defendant withdrew her not guilty plea and entered a plea of nolo contendere pursuant to State v. Crosby, 338 So. 2d 584, 588 (La. 1976). The trial court deferred imposition of sentence pursuant La. C.Cr.P. art. 893[1] and placed the defendant on supervised probation for a period of two years, gave the defendant credit for serving 120 days in the parish jail, and imposed a fine of $750.

The defendant now appeals, assigning as error the trial court's denial of the motion to quash. For the following reasons, we reverse the trial court's ruling denying the motion to quash and vacate the defendant's guilty plea conviction and sentence.

## FACTS

The following facts were established at the motion to quash hearing. On August 7, 2021, Deputy Chance Davis with the East Feliciana Parish Sheriff's Office responded to a 9-1-1 call regarding an overdose in the parking lot of a post office in Ethel, Louisiana. The 9-1-1 call was made by a male caller named Eric. When Deputy Davis arrived at the scene, a fire truck and ambulance were already there. Deputy Davis observed an overdosing male, Michael Kelly, lying on the ground and an SUV with several passengers at the scene. The defendant, Kelly's girlfriend, was standing next to the SUV. Deputy Davis approached the defendant and noted that she was severely intoxicated and "pretty much falling asleep standing up."

---

[1] See La. C.Cr.P. art. 893(E).

2

While speaking with the defendant, Deputy Davis observed a purse lying on the ground on the opposite side of the SUV from where the defendant was standing, which the defendant admitted was hers. When Deputy Davis asked the defendant about a straw that was in her purse,[2] she threw the straw, and it was not recovered. Thereafter, the defendant was placed under arrest. A female Fire Marshall officer then searched the defendant and found a small bag of Xanax in her bra.

The trial court asked Deputy Davis if — given his description of her physical condition when he arrived — the defendant would be capable of rendering medical aid. The deputy replied, "No, Ma'am."

The defendant testified at the hearing on the motion to quash. She said she was in a vehicle with Kelly and two of his friends when she noticed that Kelly was not responding, so she asked the driver to pull over. The defendant then asked the driver to help her remove Kelly from the vehicle and to lay him on the ground in the post office parking lot so that CPR could be performed on him. According to the defendant, she performed CPR on Kelly. While the defendant admitted she was not "okay" when she performed CPR on Kelly, she said she was nonetheless able to perform CPR until first responders arrived. She further stated that she was the person who suggested that 9-1-1 be called and acknowledged that she remained in place until first responders arrived. On cross examination, the defendant admitted that she was impaired or under the influence on the date of the incident.

## DISCUSSION

In her sole assignment of error, the defendant argues the trial court erred in denying the motion to quash the bill of information.

When a trial court denies a motion to quash, factual and credibility

---

[2] The record does not expressly disclose under what circumstances the straw was found in the defendant's purse, but in closing arguments on the motion to quash, the prosecutor stated that the defendant consented to Deputy Davis searching her purse, wherein Xanax was also found.

3

determinations should not be reversed in the absence of a clear abuse of the trial court's discretion. State v. Burgess, 19-1603, p. 6 (La. App. 1st Cir. 9/22/20), 315 So. 3d 279, 285, writ denied, 20-01189 (La. 2/17/21), 310 So. 3d 1148. However, a trial court's legal findings are subject to the *de novo* standard of review. State v. Hamdan, 12-1986, p. 6 (La. 3/19/13), 112 So. 3d 812, 816.

A motion to quash is, essentially, a mechanism whereby pretrial pleas are urged, i.e., pleas which do not go to the merits of the charge. At a hearing on such a motion, evidence is limited to procedural matters and the question of factual guilt or innocence is not before the court. State v. Byrd, 96-2302, p. 18 (La. 3/13/98), 708 So. 2d 401, 411, cert. denied sub nom., Peltier v. Louisiana, 525 U.S. 876, 119 S.Ct. 179, 142 L.Ed.2d 146 (1998); see La. C.Cr.P. arts. 531-38.

At issue in this appeal is the proper interpretation and application of La. R.S. 14:403.10(A), which at the time of the offense provided[3]:

> A person acting in good faith who seeks medical assistance for an individual experiencing a drug-related overdose may not be charged, prosecuted, or penalized for possession of a controlled dangerous substance under the Uniform Controlled Dangerous Substances Law if the evidence for possession of a controlled substance was obtained as a result of the person's seeking medical assistance, unless the person illegally provided or administered a controlled dangerous substance to the individual.

At the motion to quash hearing, the defendant argued that La. R.S. 14:403.10(A) did not require her to be the person who called 9-1-1 in order to avail herself of the statutory immunity. According to the defendant, her testimony that she rendered aid to Kelly indicated she was involved in seeking medical assistance. The State argued La. R.S. 14:403.10(A) was not applicable to the defendant because the defendant was not the person who had contacted 9-1-1. Further,

---

[3] The Louisiana Legislature amended and reenacted La. R.S. 14:403.10 during the 2022 regular session. See 2022 La. Acts, No. 225, § 1. The amended version of the statute became effective on August 1, 2022. See La. Const. art. 3, § 19.

4

according to the State, the evidence seized from the defendant was obtained independent of Kelly's overdose.

In denying the motion to quash, the trial court in pertinent part found the following:

> ... I realize the intentions of the legislature are well-founded in their enactment of [La. R.S.] 14:403.10. I think that it is important that it also be strictly interpreted. And I will tell you why I believe that. Number one, it says the person acting in good faith who seeks medical attention for someone experiencing an overdose can't be prosecuted for evidence found only because of that overdose. And it even puts an exception in there, unless that person illegally provided the Controlled Dangerous Substance to the person that's overdosing. Given what was found in her purse and on her body that may well have been the case here. We simply don't know.
>
> However, if I were to accept the argument of the defense that even though [the defendant] clearly was not the person who made the 911 call to request assistance, that we should still exempt her from prosecution. Well, where do we draw that line? What if instead of there being three or four people in the car it was a Suburban and there were six or eight people in it? Or what if it was a bus? A Greyhound bus and there were sixty, or forty, or fifty, or sixty people in it. Or what if it was an airplane with a couple hundred people in it? Does that mean everybody that is inside is immune from prosecution because one person overdosed? I just can't buy that. I believe that it has to be the person who called for assistance and that clearly was not [the defendant]. Therefore, the Motion to Quash is denied.

The defendant argues herein that her motion to quash the bill of information should have been granted because the statutory language "seeks medical assistance" means more than just directly contacting or placing a call to the authorities, such as 9-1-1 or the police, or bringing an overdosing person to the hospital. According to the defendant, the word "seeks" also encompasses a person who provides or renders aid to the person overdosing. We agree.

The paramount consideration in statutory interpretation is ascertainment of the legislative intent and the reason or reasons which prompted the legislature to enact the law. State v. Fussell, 06-2595, p. 13 (La. 1/16/08), 974 So. 2d 1223, 1231. Criminal statutes are to be given a genuine construction, according to the fair import of their words. Fussell, 06-2595 at p. 13, 974 So. 2d at 1231-32; see

5

also La. R.S. 1:3 ("Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language.").

The starting point in the interpretation of any statute is the language of the statute itself. State v. Shaw, 06-2467, p. 14 (La. 11/27/07), 969 So. 2d 1233, 1242. When the language of a criminal statute is susceptible to more than one meaning, the statute should be interpreted so as to be in harmony with, preserve, and effectuate the manifest intent of the legislature, and an interpretation should be avoided which would operate to defeat the purpose and object of the statute. Fussell, 06-2595 at p. 14, 974 So. 2d at 1232. Further, although criminal statutes are subject to strict construction under the rule of lenity, State v. Carr, 99-2209, p. 4 (La. 5/26/00), 761 So. 2d 1271, 1274, the rule is not to be applied with such unreasonable technicality as to defeat the purpose of all rules of statutory construction, which purpose is to ascertain and enforce the true meaning and intent of the statute. State v. Everett, 00-2998, p. 12 (La. 5/14/02), 816 So. 2d 1272, 1279.

What the legislature states in the text of a statute is considered the best evidence of its intent or will. State v. Williams, 00-1725, p. 13 (La. 11/28/01), 800 So. 2d 790, 800. Therefore, where the words of a statute are clear and free from ambiguity, they are not to be ignored under the pretext of pursuing their spirit. La. R.S. 1:4; Shaw, 06-2467 at p. 14, 969 So. 2d at 1242.

No court in this state has addressed the meaning of the word "seeks" in La. R.S. 14:403.10(A). Moreover, there are no provisions in, or in reference to, La. R.S. 14:403.10 that define any of the words in that statute. The statute in no way instructs or dictates the manner in which medical assistance can or should be sought. Further, the word "seek" is commonly defined as: "1. To try to find or discover: search for. 2. To try to obtain or reach. 3. To go to or toward. 4. To ask for: REQUEST." Webster's II New College Dictionary, 999 (Houghton

6

Mifflin Company 2001). However, at issue in this case is not how the word "seek" is defined, but how the action is performed.

The State contends, and the trial court agreed, that the statute requires an uninterrupted direct chain of action between the person claiming immunity under La. R.S. 14:403.10 and the persons or entities from which medical assistance is sought. However, the statute contains no language indicating that an uninterrupted direct chain action is required. Likewise, there is nothing in the language of the statute that prohibits or would preclude a person from indirectly seeking medical assistance. Instead, we find that at the most, the statute requires some overt action to seek medical assistance by a person claiming immunity under the statute. Thus, based on the common usage of the word "seek," we find that a person who "seeks" medical assistance under La. R.S. 14:403.10(A) refers to anyone who makes an overt effort to obtain medical assistance for an individual experiencing an overdose.

The historical context in which this legislation was proposed, as well as the legislative history, buttresses our reading and application of the statute's language.[4] In the introduction of an article published in 2020 by the Journal of Legal Medicine, it was recognized that:

> Over the past 20 years, the increased availability of controlled prescription drugs and inexpensive heroin has led to a dramatic increase in overdose deaths in the United States. Since 2008, drug overdoses have killed more people each year in the United States than either motor vehicle crashes or the misuse of firearms.

Thomas E. Griner et. al., State-by-State Examination of Overdose Medical Amnesty Laws, 40 J. Legal Med. 171, 173 (2020). The introduction goes on

---

[4] In Fussell, 06-2595 at p. 20, 974 So.2d at 1235, the Louisiana Supreme Court recognized that "[i]n many cases, the legislative history of an act and contemporaneous circumstances may be helpful guides in ascertaining legislative intent." See also La. R.S. 24:177 ("[w]hen the meaning of a law cannot be ascertained ..., the court shall consider the intent of the legislature. .... The occasion and necessity for the law, the circumstances under which it was enacted, concepts of reasonableness, and contemporaneous legislative history may also be considered in determining legislative intent.").

further to note that "the time from initial injection or consumption to death may leave little time for an overdose witness to intervene and seek medical attention for the victim." Yet, it was found that emergency medical services were sought in fewer than half of overdose events because the witnesses to overdoses are often people who use drugs themselves and who fear legal consequences such as arrest and prosecution for drug offenses, as well as other possible consequences. Griner, supra, at 173.

As indicated by the title, the purpose of the cited article was to report the results of research examining medical amnesty laws that were in effect as of January 2019 for all 50 states in the United States plus the District of Columbia and the U.S. Virgin Islands. Griner, supra, at 175-76. In discussing the scope of coverage of the medical amnesty laws researched, the article relevantly mentions:

> Including all who attempt to help during an emergency is important, because an individual who renders first aid to an overdose victim (while another calls 9-1-1) may help save the victim's life. An individual who meets first responders at the curb and leads them to an overdose victim may save precious minutes that prove critical. Contributing to a life-saving effort beyond placing a 9-1-1 call should not be disregarded or ignored, as might occur in those states that do not clearly provide for immunity for all individuals who aid or assist in overdose emergencies. Failing to grant immunity to all who provide meaningful assistance seems to undercut the often-stated legislative purpose of saving lives.

Griner, supra, at 181.

When then Senator Sharon Weston Broome introduced the bill that would become La. R.S. 14:403.10, she mentioned the following information:

> Accidental overdose deaths are now the leading cause of accidental death in the United States, exceeding even motor vehicle accidents, among people ages 25 to 64. Many of these deaths ... are preventable, if emergency medical assistance is summoned. But people using drugs or alcohol illegally often fear arrest if they call 9-1-1 or if they get involved with a friend or a family member at the scene of a suspected overdose. The best way to encourage overdose witnesses to seek medical help is to exempt them from arrest and prosecution for minor drug and alcohol law violations. This approach has been called or referred to as the "Good Samaritan" approach. The chance of surviving an overdose, like that of surviving a heart attack,

8

depends greatly on how fast one receives medical assistance. Witnesses to heart attacks rarely think twice about calling 9-1-1, but witnesses to an overdose often hesitate to call for help, or in many cases, simply don't make the call. In fact, research confirms the most common reason people cite for not calling 9-1-1 is fear of police involvement.

.... The number of drug overdose deaths in Louisiana, a majority of which were due to opioids, tripled from 1999 to 2013. Louisiana has the 19th highest drug overdose mortality rate in the United States, with 13.2 per one thousand people suffering overdose fatalities. .... It has been estimated that only between ten and 56 percent of individuals who witness a drug overdose call for emergency medical services with most of those doing so only after other ineffective attempts to revive the overdose victim have proved unsuccessful.

This law would alleviate the fear of witnesses to a drug overdose by protecting them from prosecution. And that is basically what the bill does.

Video of Hearing on S.B. 422 before the S. Comm. on Judiciary C, 2014

Reg. Sess., at 17:50 to 20:52 (La. March 25, 2014).

The function of the court is to interpret the laws so as to give them the meaning which the lawmakers obviously intended them to have and not to construe them so as to give them absurd or ridiculous meanings. Shaw, 06-2467 at p. 18, 969 So. 2d at 1244 (quoting Savoie v. Rubin, 01-3275, p. 4 (La. 6/21/02), 820 So. 2d 486, 488).

In this case, it would be reasonably expected that a person capable of providing immediate aid would do so. Further, it can be said that the defendant additionally sought medical assistance for Kelly by requesting the driver of the vehicle in which she and Kelly were traveling to pull over and further requesting assistance in moving Kelly from the vehicle so that she could administer CPR. The defendant's uncontroverted testimony was that she requested the driver of the vehicle in which she and Kelly were traveling to pull over; she requested assistance in removing Kelly from the vehicle so that she could provide CPR; and she requested that someone, presumably "Eric," call 9-1-1. Hence, the defendant's actions fell squarely within the meaning and intent of La. R.S. 14:403.10(A),

9

entitling her to the immunity the statute provides.

Finally, we find no merit in the State's alternative assertion that the defendant was arrested based on evidence obtained independent of Kelly's overdose. Deputy Chance acknowledged that he was present at the post office in Ethel, whereby he had the occasion to observe the defendant's extreme intoxication and her purse (which was later discovered to contain illegal drugs and drug paraphernalia), because he was dispatched to that location for an overdose call. In all likelihood, the defendant's purse was left in the observed location in the course of either removing Kelly from the vehicle or the defendant exiting the vehicle to render aid to Kelly. Thus, absent the call being made to 9-1-1, the record does not disclose that Deputy Chance would have otherwise been present to observe the defendant or her discarded purse. Likewise, absent the defendant's request that the driver stop the vehicle in which she and Kelly were traveling, and absent her further instruction to remove Kelly from the vehicle to the post office parking lot (where she remained and attempted to provide first aid while waiting on first responders to arrive), she nor her purse would not have been observed by Deputy Chance on the date of her arrest. Thus, we find that the defendant's arrest was a direct result and not independent of her seeking medical assistance for Kelly.

Based on the foregoing, we find the trial court abused its discretion in denying the motion to quash and therefore reverse the trial court's ruling. Accordingly, we hereby grant the motion to quash and vacate the defendant's guilty plea conviction and sentence.

**DENIAL OF THE MOTION TO QUASH REVERSED; MOTION TO QUASH GRANTED; GUILTY PLEA CONVICTION AND SENTENCE VACATED.**

10

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 KA 0309

STATE OF LOUISIANA

VERSUS

CHRISTINE JACKSON

**WHIPPLE, C.J., dissenting.**

I respectfully disagree with the majority opinion herein. I believe the majority errs in relying on various articles and legislative oration in ascertaining legislative intent and will, where the text of a statute itself is the best evidence of the legislative intent or will. See Borel v. Young, 2007-0419 (La. 11/27/07), 989 So. 2d 42, 49, affirmed on rehearing, 2007-0419 (La. 7/1/08), 989 So. 2d 42. Moreover, I find the majority's interpretation of LSA-R.S. 14:403.10(A) to extend immunity to the defendant based upon her actions of requesting that another person call 911 to "seek medical assistance," to be an impermissible extension of immunity beyond the scope of the statute. Finally, I disagree with the majority's conclusion that the defendant's actions herein of purportedly administering CPR fell within the language of the statute which grants immunity for "seeking medical assistance," particularly considering her admittedly impaired state.

At the time of the offense, the applicable version of LSA-R.S. 14:403.10(A), provided:[1]

> A person acting in good faith who **seeks medical assistance** for an individual experiencing a drug-related overdose may not be

---

[1] Louisiana Revised Statute 14:403.10 was subsequently amended and reenacted by La. Acts 2022, No. 225, § 1.

charged, prosecuted, or penalized for possession of a controlled dangerous substance under the Uniform Controlled Dangerous Substances Law if the evidence for possession of a controlled substance was obtained as a result of the person's seeking medical assistance, unless the person illegally provided or administered a controlled dangerous substance to the individual. [Emphasis added.]

The defendant argues, and the majority agrees, that the statutory language "seeks medical assistance" also encompasses a person who attempts to render aid to the person overdosing and that LSA-R.S. 14:403.10(A) did not require that she call 911 in order to avail herself of this statutory defense. The State argues that the statute should be applied as given by the legislature, and thus, LSA-R.S. 14:403.10(A) was not applicable to the defendant, as the defendant was not the person who had contacted 911 to "seek" medical assistance, and the evidence seized from the defendant was obtained independent of Kelly's overdose.

In strictly interpreting the statute, the trial court noted its relevant concerns about applying the interpretation suggested by the defendant:

> [W]hile I realize the intentions of the legislature are well-founded in their enactment of 14:403.10. I think that it is important that it also be strictly interpreted. And I will tell you why I believe that. Number one, it says the person acting in good faith who seeks medical attention for someone experiencing an overdose can't be prosecuted for evidence found only because of that overdose. And it even puts an exception in there, unless that person illegally provided the Controlled Dangerous Substance to the person that's overdosing. Given what was found in her purse and on her body that may well have been the case here. We simply don't know.
> However, if I were to accept the argument of the defense that even though Ms. Jackson clearly was not the person who made the 911 call to request assistance, that we should still exempt her from prosecution. Well, where do we draw that line? What if instead of there being three or four people in the car it was a Suburban and there were six or eight people in it? Or what if it was a bus? A Greyhound bus and there were sixty, or forty, or fifty, or sixty people in it. Or what if it was an airplane with a couple hundred people in it? Does that mean everybody that is inside is immune from prosecution because one person overdosed? I just can't buy that. I believe that it has to be the person who called for assistance and that clearly was not Ms. Jackson. Therefore, the Motion to Quash is denied.

The defendant argues that the statutory language "seeks medical assistance" should be interpreted to extend immunity to more than the person contacting or

placing a call to the authorities, such as 911 or the police, or transporting an overdosing person to the hospital. According to the defendant, the word "seek" also encompasses that person who provided or rendered aid to the person overdosing and should be read to encompass someone who acts in concert with others to obtain or provide aid to someone who is overdosing.

However, the starting point in the interpretation of any statute is the language of the statute itself. State v. Shaw, 2006-2467 (La. 11/27/07), 969 So. 2d 1233, 1242. Interpretation of the language of a criminal statute is governed by the rule that the Articles of the criminal code "cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." LSA-R.S. 14:3; State v. Skipper, 2004-2137 (La. 6/29/05), 906 So. 2d 399, 403. Further, although criminal statutes are subject to strict construction under the rule of lenity, State v. Carr, 99-2209 (La. 5/26/00), 761 So. 2d 1271, 1274, the rule is not to be applied with such unreasonable technicality as to defeat the purpose of all rules of statutory construction, which purpose is to ascertain and enforce the true meaning and intent of the statute. State v. Everett, 2000-2998 (La. 5/14/02), 816 So. 2d 1272, 1279.

Where the meaning of the word "seeks" in LSA-R.S. 14:403.10(A) has not been addressed by a court in this state, the defendant cites to out-of-state jurisprudence in support of her argument that the word "seeks" should have a broader meaning. However, in People v. O'Malley, 183 N.E.3d 928 (Ill. App. Ct. 2021), appeal denied, 175 N.E.3d 148 (Ill. 2021), the statutory language at issue was, "A person who, in good faith, **seeks or obtains** emergency medical assistance for someone experiencing an overdose shall not be charged or prosecuted for Class

3

4 felony possession ... ." O'Malley, 183 N.E. 3d at 935. (Emphasis added.) In that case, the defendant was driving while a person was overdosing in the backseat of the vehicle. While the defendant was in possession of drugs, the trial court found she was immune from prosecution because she was driving the overdosing person in the direction of a hospital. O'Malley, 183 N.E. 3d at 930-34. The appellate court reversed, ultimately finding that the defendant did not establish that she either informed the police that someone was overdosing in the vehicle or had the intent to drive to the hospital and, as such, she had not, in good faith, sought or obtained emergency medical assistance for the overdosing person. O'Malley, 183 N.E. 3d at 936-37.

The defendant nonetheless relies on the following statements in O'Malley as supporting her argument for an extension of immunity to her:

> By our findings in this matter, we are not holding that the limited immunity provided by section 414(b) is confined to a specific number of individuals at the scene of an overdose who could potentially be seeking or obtaining emergency medical assistance. Hypothetically, one person could be contacting emergency services, another could be administering CPR or other lifesaving measures, while another could be standing out in the road to ensure that emergency services arrived at the correct location. As written, however, section 414(b) requires that each of these individuals demonstrate that their actions were, in good faith, for the purpose of seeking or obtaining medical assistance for the overdosing victim.

O'Malley, 183 N.E.3d at 939.

According to the defendant, it is clear from the foregoing language that the O'Malley court read "seeking of medical assistance" to include the person administering CPR while another contacted emergency services. The defendant avers that since the Louisiana statute is "quite similar" to the O'Malley statute, she should have immunity under LSA-R.S. 14:403.10, as she took overt actions to seek aid.

I find no support for these arguments in O'Malley. First, the language relied on by the defendant is a hypothetical set forth within dicta. Moreover, there was

4

no particularized analysis by the O'Malley court of the meaning of the phrase "seeks or obtains" because that was not the issue before the court. Instead, the issue was whether the defendant had made a "good faith" attempt to seek or obtain medical assistance. Moreover, the Illinois statutory language itself is significantly broader and more expansive than the language in Louisiana's statute; that is, the Illinois statute contains the language **"seeks or obtains,"** whereas our statute contains only the word **"seeks"** (and "seeking").

I am further not persuaded by the other out-of-state jurisprudence cited by the defendant as these cases are inapposite for similar reasons, namely, these cases do not address the specific issue addressed in the instant matter.[2]

---

[2] In Noble v. State, 189 A.3d 807 (Md. Ct. Spec. App. 2018), the issue was whether the overdosing defendant was also covered by the statute when it was the defendant's girlfriend who called 911. The statutory language at issue was found in CP § 1-210(d): "A person who seeks, provides, or assists with the provision of medical assistance in accordance with subsection (b) or (c) of this section may not be sanctioned for a violation ...." The State argued that since the defendant did not personally seek medical assistance, he was not entitled to immunity from prosecution. The Noble court disagreed, finding that subsection (d) referred to subsection (c) of CP § 1-210, which provided that the person receiving medical assistance was also entitled to protection. Noble, 189 A.3d at 812-16.

In State v. Mercier, 826 S.E.2d 422 (Ga. Ct. App. 2019), the trial court granted the defendant's motion for immunity under Georgia's 9-1-1 Medical Amnesty Law. The State appealed, arguing that the defendant, who had overdosed, was not entitled to immunity because the multiple 911 emergency calls made were for a suspected hit-and-run and not a drug overdose. The Mercier court affirmed the judgment of the trial court, finding that nothing in the relevant statute required the caller to subjectively conclude that the subject of the call was experiencing a drug overdose in order for the statute's protections to apply. Mercier, 826 S.E.2d at 424.

In Gerety v. State, 246 A.3d 629 (Md. Ct. Spec. App. 2021), the issue was whether the evidence was obtained solely as a result of the person seeking or receiving medical assistance. A 911 call led the police to the defendant and a woman who were in a parked SUV. The defendant had taken drugs, but refused medical assistance. The police found heroin in the vehicle. Gerety, 246 A.3d at 633-35. The trial court ruled the defendants were not immune under CP § 1-210(c) because the police had not responded to the location where their attention was originally drawn by the caller. The trial court concluded that the legislature did not "intend[ ] to create a forever shield [for] everything factually downstream from a response[ ] ... to a call[.]" Gerety, 246 A.3d at 636. The Gerety court reversed the trial court, finding that the defendants were immune under the statute because they were passive recipients of medical assistance initiated by a 911 call, and the drugs seized from the SUV were obtained solely as a result of their receipt of medical assistance. Gerety, 246 A.3d at 637, 640-44. Similarly in People v. Markham, 126 N.E.3d 759, 764 (Ill. App. Ct. 2019), the appellate court held that the defendant who had suffered a heroin overdose, was immune from prosecution for unlawful possession of a controlled substance because the evidence was acquired "as a result" of the defendant's female companion calling 911 for emergency medical assistance.

In Pope v. State, 246 So. 3d 1282 (Fla. 1st DCA 2018), the defendant was at home taking heroin with friends, one of whom overdosed. The defendant called 911. The police found heroin and marijuana in the defendant's home and arrested him. The defendant sought prosecutorial immunity under the "911 Good Samaritan Act" since he acted in good faith seeking medical assistance for the overdosing friend. The court noted that it was undisputed that the drugs were obtained as a result of the defendant's seeking medical assistance. The only issue on

5

There are no provisions in LSA-R.S. 14:403.10 that define any of the words in that statute. However, what a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. State v. Williams, 2000-1725 (La. 11/28/01), 800 So. 2d 790, 800. Therefore, where the words of a statute are clear and free from ambiguity, they are not to be ignored under the pretext of pursuing their spirit. LSA-R.S. 1:4; Everett, 816 So. 2d at 1279.

The word "seek" is defined as: 1. To try to find or discover : search for. 2. To try to obtain or reach. 3. To go to or toward. 4. To ask for : REQUEST. Webster's II New College Dictionary, 999 (Houghton Mifflin Company 2001). Based on the common usage of the word "seek," we see no reason to disturb the finding of the trial court. For purposes of the statutory immunity, a person who "seeks" medical assistance under LSA-R.S. 14:403.10(A) refers to anyone who is trying to obtain medical assistance by, for example, calling 911 or transporting the overdosing victim to the hospital or some medical facility. The statute does not include the term "render" nor does it refer to the "rendering of" assistance. Thus, under the plain language of the statute, the act of rendering CPR to an overdosing victim is not tantamount to "seeking" medical assistance.[3] If the legislature had intended otherwise, it could have provided more expansive statutory language, such as a "person acting in good faith who, seeks, *performs, or provides*, medical assistance ... ."

In my view, absent more in the statute at issue, "seek" is not the same as, nor

---

appeal was whether the defendant acted in good faith in seeking the assistance. The appellate court found the defendant was entitled to immunity from prosecution for drug possession because under a plain reading of the 911 Good Samaritan Act, the defendant was a person acting in good faith who sought medical assistance. Pope, 246 So. 3d at 1284.

[3]Moreover, under a plain reading of the statute, the person and *only* that person who seeks medical assistance is the person potentially entitled to immunity despite the defendant's assertion that "seek" should be interpreted more broadly. Since LSA-R.S. 14:403.10(A) expressly contemplates "A person" seeking medical assistance, I see no basis for extending its immunity to the combined efforts of a group of people.

does it include within its definition, the act of providing first aid or other medical assistance. For example, in State v. Derstine, No. A19-1594, 2020 WL 614205 (Minn. Ct. App. 2/10/20), the relevant statutory language provides:

> Subdivision 1. Person seeking medical assistance; immunity from prosecution. A person acting in good faith who seeks medical assistance for another person who is experiencing a drug-related overdose may not be charged or prosecuted for the possession, sharing, or use of a controlled substance . . . A person qualifies for the immunities provided in this subdivision only if:
>
> (1) the evidence for the charge or prosecution was obtained as a result of the person's seeking medical assistance for another person; and
> (2) the person seeks medical assistance for another person who is in need of medical assistance for an immediate health or safety concern, provided that the person who seeks the medical assistance is the first person to seek the assistance, provides a name and contact information, remains on the scene until assistance arrives or is provided, and cooperates with the authorities.
>     *       *       *       *       *
> Subd. 4. Effect on other criminal prosecutions.
>
> (a) *The act of providing first aid or other medical assistance to someone* who is experiencing a drug-related overdose may be used as a mitigating factor in a criminal prosecution for which immunity is not provided.

Derstine, 2020 WL 614205 at *2-3. (Emphasis added).

The foregoing statutory language clearly delineates between the person **seeking** medical assistance and the person **providing** first aid to the overdosing victim, thus implicitly recognizing that the meaning of "seeking" does not concomitantly encompass "providing first aid or other medical assistance."

Notwithstanding the foregoing, the defendant would not have been entitled to prosecutorial immunity under LSA-R.S. 14:403.10(A). It was the defendant's own extreme intoxication that led directly to her arrest, completely separate and apart from any issues regarding her rendering aid. Further, as the trial court correctly pointed out in its reasons for denying the motion to quash, it was not clear what caused the victim, Michael Kelly, to overdose. As the trial court noted, it was possible the defendant could have provided the Xanax that she had in her

7

possession to the victim, which caused his overdose. If so, then the immunity in LSA-R.S. 14:403.10 clearly would not apply to the defendant herein, as indicated by the qualifying statutory language: "unless the person illegally provided or administered a controlled dangerous substance to the individual."

Finally, paragraph (A) of LSA-R.S. 14:403.10 uses the permissive "may," while paragraph (B) of the statute uses the mandatory "shall." Thus, paragraph (A) appears to provide limited immunity for the person seeking medical assistance, leaving it up to the State to decide if it will prosecute or not. See LSA-C.Cr.P. art. 5; Derstine, 2020 WL 614205 at *3-4.

For these reasons, I find no abuse of discretion by the trial court in denying the defendant's motion to quash. Thus, I respectfully dissent and would affirm the defendant's conviction and sentence.